**In re Joseph Charles RUBIOLA et al., Relators.**

No. 09–0309.

Supreme Court of Texas.

Argued Sept. 16, 2010.

Decided March 11, 2011.

Bernard Lee Shub, The Law Office of Ben Shub, Elizabeth Conry Davidson, San Antonio TX, for Joseph Charles Rubiola.

Bryan A. Woods, Law Office of Bryan A. Woods, San Antonio TX, for Real Party in Interest Brian Salmon.

Justice MEDINA delivered the opinion of the Court.

In this original mandamus proceeding, Relators seek to compel arbitration under an arbitration agreement they did not sign. The real parties in interest, who are signatories to the arbitration agreement, object to arbitration and contend that Relators cannot compel arbitration because Relators are not parties to the arbitration agreement. The trial court apparently agreed because it denied Relators' motion to compel arbitration. The underlying arbitration agreement, however, designated certain non-signatories as parties to the agreement.

We must decide whether the parties who actually agree to arbitrate may also grant third parties the right to enforce their arbitration agreement and, if so, whether the signatories here intended to grant such rights to these Relators. We conclude that parties to an arbitration agreement may grant non-signatories the right to compel arbitration and that the Relators here were granted that right. The trial court therefore erred in denying the motion to compel arbitration, and we conditionally grant the writ.

I

The underlying case concerns the sale and financing of a home. Brian and Christina Salmon agreed to purchase the home from Greg Rubiola and his wife Catherine. The transaction was handled by J.C. Rubiola, Greg's brother, who served as the listing broker for the property. The Salmons and Rubiolas signed a standard form Texas real estate sales contract, which did not contain an arbitration clause.

Greg and J.C. Rubiola operate a number of real estate related businesses in San Antonio. The Rubiola brothers buy and sell real estate through Rubiola Management, L.L.C., which is the general partner of Rubiola Realty, Ltd. and Rubiola Properties, Ltd. Greg and J.C. are also president and vice-president, respectively, of Rubiola Mortgage Company, a corporation the brothers use to obtain financing for real estate buyers. The Rubiola brothers' business interests are operated at the same location under the name Rubiola Mortgage and Realty, which they advertise as a one-stop shop for customers' real estate needs: offering the ability to buy, sell, build, finance, and manage real estate through a single company.

After agreeing to purchase Greg Rubiola's home, the Salmons applied for mortgage financing with Rubiola Mortgage Company, using J.C. Rubiola as their mortgage broker and loan officer. As part of the loan process, the Salmons executed an arbitration agreement with the mortgage company. This agreement provided that:

> Arbitrable disputes include any and all controversies or claims between the parties of whatever type or manner, including without limitation, all past, present and/or future credit facilities and/or agreements involving the parties. This arbitration provision shall survive any termination, amendment, or expiration of the agreement in which this agreement is contained, unless all of the parties expressly agree in writing.

The agreement further defined "parties" to include:

> Rubiola Mortgage Company, and each and all persons and entities signing this agreement or any other agreements between or among any of the parties as part of this transaction. "The parties" shall also include individual partners, af-

filiates, officers, directors, employees, agents, and/or representatives of any party to such documents, and shall include any other owner and holder of this agreement.

J.C. Rubiola signed the agreement on behalf of Rubiola Mortgage Company, and the Salmons signed a form acknowledging J.C.'s dual role as a real estate agent and mortgage broker. The sale closed, and the Salmons moved into their new home.

Several months later, the Salmons sued the Rubiolas and other entities and individuals involved in repairing the home (collectively referred to as the Rubiolas).[1] The Salmons alleged that J.C. Rubiola, acting as both the listing agent and a principal involved in the home's construction and repair, made a series of misrepresentations that induced the Salmons to purchase the home. They also alleged violations of the Deceptive Trade Practices Act and negligent supervision of repairs made to the home. The Salmons sought either to rescind the sale or to collect damages. The Rubiolas answered and moved to compel arbitration, relying on the arbitration agreement signed by the Salmons and Rubiola Mortgage Company during financing.

The trial court denied the Rubiolas' motion to compel, causing the Rubiolas to seek mandamus relief in the court of appeals. The court of appeals also refused to compel arbitration, and the Rubiolas filed the present mandamus proceeding, seeking again to enforce the underlying arbitration agreement as a non-signatory.

## II

■ The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce. *See* 9 U.S.C. § 2; *see also In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d 125, 127 (Tex.1999) (per curiam). Parties may also expressly agree to arbitrate under the FAA. *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 605–06 & n. 3 (Tex.2005) (per curiam). The arbitration agreement here expressly provides for arbitration under the FAA, and although the Salmons oppose arbitration, generally, they do not contest the application of the FAA.

■ Under Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see In re Halliburton Co.,* 80 S.W.3d 566, 573 (Tex.2002). "A party denied the right to arbitrate pursuant to an agreement subject to the FAA does not have an adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion." *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 642–43 (Tex.2009).

## III

■ A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005). The Rubiolas contend that the arbitration agreement, executed during financing, is broad enough to cover all of the Salmon's claims against them. The Salmons argue, however, that the arbitration agreement extends only to disputes under the financing agreement, as opposed to the real es-

---

1. J.C. Rubiola, Gregory Rubiola, Catherine Rubiola, JGL–Design Build, L.L.C., Michael Cortez individually and d/b/a The Heights De- sign and Construction are defendants in the underlying suit and Relators in this Court.

tate sales agreement, and that its breadth cannot be used by non-signatories to compel arbitration. This disagreement raises two issues: do the Rubiolas, as non-signatories to the arbitration agreement, have authority to compel the Salmons to arbitrate, and, if so, does the arbitration clause cover the Salmons' claims. The first issue questions the validity of the arbitration clause, while the second questions the clause's scope.

## A

■ Whether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide. *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex. 2005); *Sherer v. Green Tree Servicing LLC,* 548 F.3d 379, 381 (5th Cir.2008). Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 738 (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). An obligation to arbitrate not only attaches to one who has personally signed the written arbitration agreement but may also bind a non-signatory under principles of contract law and agency. *Id.* at 738. Generally, however, parties must sign arbitration agreements before being bound by them. *See Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 528 (5th Cir.2000) (noting that "arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory"). Although "[a]rbitration agreements apply to nonsignatories only in rare circumstances[,]" the question of "[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 355, 358 (5th Cir.2003). Here the question is not whether a non-signatory may be compelled to arbitrate but rather whether a non-signatory may compel arbitration.

■ The Salmons argue that because none of the Rubiolas signed the arbitration agreement, except J.C., who signed only as the representative of Rubiola Mortgage Company, that none of them are entitled to compel the Salmons to arbitrate. The Salmons thus equate signing with being a party to the agreement. The arbitration agreement, however, expressly provides that certain non-signatories are to be parties to the agreement. The agreement defines parties to include "Rubiola Mortgage Company, and each and all persons and entities that sign this agreement or any other agreements between or among any of the parties as part of this transaction." Parties further include "individual partners, affiliates, officers, directors, employees, agents, and/or representatives of any party to such documents."

The Rubiolas argue, and we agree, that the arbitration agreement's broad definition of parties, at a minimum, made J.C. and Greg Rubiola parties to the arbitration agreement.[2] Rubiola Mortgage Company signed the arbitration agreement, and the Rubiola brothers are clearly officers and representatives of the mortgage company

---

2. J.C. and Greg Rubiola are the President and Vice President of Rubiola Mortgage Company. JGL Design Builders L.L.C. is a Texas limited liability corporation, owned and managed by J.C. and Greg Rubiola. Michael Cor- tez individually and d/b/a the Heights Design and Construction was the original contractor hired by the Rubiolas to remediate the mold and water damage at the property.

and thus non-signatory parties to the arbitration agreement under the agreement's terms. Because the arbitration agreement expressly provides that certain non-signatories are considered parties, we conclude that such parties may compel arbitration under the agreement. *See Sherer,* 548 F.3d at 382 (noting that trial court's application of equitable estoppel to determine whether non-signatory might compel arbitration, was unnecessary because the terms of the Loan Agreement clearly identify when a party might be compelled to arbitrate with a non-signatory); *Bridas,* 345 F.3d at 356 (noting that ordinary principles of contract and agency law may be called upon to bind a non-signatory to an agreement whose terms have not clearly done so); *see also* Carolyn Lamm, *Defining The Party—Who is a Proper Party in an International Arbitration Before the American Arbitration Association and Other International Institutions,* 34 GEO. WASH. INT'L L.REV. 711, 720 (2003) (noting that courts prohibit enforcement by non-signatories "where (1) the contract does not expressly grant third parties the ability to participate in the arbitration; (2) the parties have not contemplated the idea; and (3) non-signatory involvement would constitute an invasion of the consensual nature of arbitration."). But even though the Rubiolas are identified as non-signatories who may compel arbitration, there remains the question whether the Salmons' underlying claims fall within the arbitration agreement's scope.

## B

When deciding whether claims fall within an arbitration agreement, courts employ a strong presumption in favor of arbitration. *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996) (per curiam) (holding that "[f]ederal and state law strongly favor arbitration," and that "a presumption exists in favor of agreements to arbitrate under the FAA"); *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995) (holding that under the FAA "any doubts as to whether claims fall within the scope of the agreement must be resolved in favor of arbitration," and that "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue'"). The Rubiolas advance three arguments for why the arbitration clause covers the Salmons' claims: (1) the language of the clause covers the claims, (2) J.C.'s alleged actions occurred while he was acting under both the mortgage and real estate contracts, so his alleged actions were factually intertwined with the mortgage agreement, and (3) the two instruments should be read together because they were executed contemporaneously as part of the same transaction and because the mortgage agreement was essential to the overall deal. The Salmons argue, on the other hand, that the arbitration clause does not cover their claims because those claims relate only to J.C.'s role as the listing agent to the real estate contract. The Salmons further deny that their alleged facts intertwine with the mortgage agreement, or that the contracts should be construed together because they were signed by different parties at different times and without reference to each other.

To determine whether a claim falls within the scope of the agreement, courts must "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *Marshall,* 909 S.W.2d at 900. The factual allegations in the Salmons' complaint center around a variety of alleged misrepresentations that J.C. Rubiola made in his capacity as the listing agent to the real estate

transaction. J.C. allegedly promised that certain repairs would be made to the Salmons' satisfaction after closing. When they were not and other serious problems materialized after closing, J.C. allegedly made more promises to fix the problems or to repurchase the home if the repairs were not satisfactory.

The underlying arbitration agreement defines arbitrable disputes to include "any and all controversies between the parties of whatever type or manner, including without limitation, all past, present and/or future credit facilities and/or agreements involving the parties." The Rubiola brothers were, as we have already concluded, non-signatory parties to the arbitration agreement, which broadly covers all controversies between the parties and all past, present or future agreements involving the parties. This language indicates that the arbitration agreement was not limited to the financing part of the transaction but rather extended to the real estate sales contract and the Salmons complaints regarding that sale.

The Salmons argue, however, that including the real estate sales contract as part of the transaction subject to arbitration is contrary to the terms of that contract. The real estate contract stated that it constituted the entire agreement between the parties and further provided that the parties could enforce it in court. The contract, however, also states that it could be amended by a later writing. In the arbitration agreement, executed a month later as part of the process for obtaining financing, the Salmons agreed to arbitrate all controversies between the parties and all past agreements involving the parties.

\* . \* \*

We conclude that signatories to an arbitration agreement may identify other parties in their agreement who may enforce arbitration as though they signed the agreement themselves. We further conclude that the underlying arbitration agreement in this case identified the Rubiolas as parties to the agreement and that they accordingly had the right to compel arbitration. Finally, we conclude that the trial court's order denying arbitration is an abuse of discretion for which we conditionally grant Relators' request for mandamus relief. Tex.R.App. P. 52.8(c). The writ will issue only if the trial court fails to enforce the arbitration agreement.