GOLDEN AGE SENIOR LIVING OF EL PASO, LLC and Sunridge at Cambria, Appellants,

v.

John Patrick ATWOOD, Appellee.

No. 08–14–00161–CV

Court of Appeals of Texas, El Paso.

January 8, 2016

Jay M. Wallace, Bell Nunnally & Martin LLP, Dallas, TX, for Appellants.

John P. Mobbs, Attorney at Law, El Paso, TX, for Appellee.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

### *OPINION*

YVONNE T. RODRIGUEZ, Justice

In this employment-discrimination case brought by John Patrick Atwood against Golden Age Senior Living of El Paso, LLC (Senior Living) and Sunridge at Cambria (Senior Care), Senior Living and Senior Care (collectively, "Appellants")[1] sought to compel arbitration pursuant to an arbitration agreement they did not sign. Atwood asserted Appellants could not compel arbitration because they could not prove the existence of a valid and enforceable agreement to arbitrate his claims against them. Specifically, he claimed the agreement was invalid because Appellants are not parties to it and unenforceable because it is so one-sided as to be substantively unconscionable. The trial court apparently agreed with Atwood's argument because it denied the motion to compel without explanation. On appeal, Appellants contend the trial court erred in so ruling. They assert they were parties to the agreement and "the Arbitration Agreement covers the dispute at issue and is not substantively unconscionable." We conclude otherwise and, therefore, affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

Atwood was hired by Senior Living to work at "Sunridge at Cambria." Approximately one year later, he was fired, ostensibly for complaining of discriminatory treatment. After obtaining administrative permission to sue, Atwood brought a cause of action against Appellants for gender discrimination and retaliation. They, in turn, answered and moved to compel arbitration pursuant to a "*MANDATORY ARBITRATION PLAN.*" Under the plan, an "Employee" agrees to submit to binding arbitration any legally-recognized "Claim" against the "Company," including those alleging discriminatory-employment practices.[2] The term "Claim" is defined as "any claim … which an Employee has with the Company, or the Company has with the Employee, which could normally

---

1. Senior Living and Senior Care are financially intertwined companies.

2. The arbitration clause reads, in pertinent part:
   1.05 All employees, by applying for, accepting or by continuing employment after the implementation of this plan, shall be required to submit any legally recognized claim to arbitration, rather than litigation, according to this plan and the rules established for its enforcement. The company shall also be required to proceed to arbitration on all matters brought for arbitration by an employee.

be made the basis of a lawsuit in a State or Federal Court." ' The term "Company" is defined as:

> [T]he employer and any, present or former, officer, director, shareholder, co-worker, attorney, agent or client of the Company. This definition shall also include any parent company, holding company, subsidiary or any other entity which has or had an economic interest in the Company.

The term "employer" is not defined.

But the *"MANDATORY ARBITRATION PLAN"* was not signed by Senior Living or Senior Care. Instead, it was signed by "Keith Ashburn" in his capacity as "Chief Operating Officer" of "12 Oaks Management Services, Inc.," the entity responsible for managing Sunridge at Cambria pursuant to an agreement with the facility's tenant, Senior Care. Ashburn averred that, under this management agreement, "12 Oaks assumes most administrative, payroll, and human resources functions at the [facility] on behalf of . . . Senior Living." 12 Oaks, according to him, was acting on behalf of Senior Living when it "had each of Senior Living's employees, including . . . Atwood, agree to the provisions of a Mandatory Arbitration Plan and execute an acknowledgment of same." The acknowledgment signed by Atwood is titled "RECEIPT OF 12 OAKS SENIOR LIVING DISPUTE RESOLUTION PROGRAM AND MUTUAL AGREEMENT TO ARBITRATE CLAIMS" and states:

> Employee has received and reviewed the 12 Oaks Senior Living Dispute and Resolution Program and Mutual Agreement to Arbitrate Claims, understands that the Dispute Resolution Program is mandatory and applicable to all Employees as of June 15, 2004, and understands that a copy of the Acknowledgment will be placed in his/her file. Employee has had the opportunity to ask his/her supervisor and 12 Oaks Senior Living management staff any questions he/she may have concerning the Agreement.

Atwood opposed arbitration for the reasons identified earlier, and the parties filed briefs in support of their respective positions. The trial court held a hearing, but it was not recorded. After taking the motion under advisement, the trial court signed an order denying it without explanation. Appellants did not request, and the trial court did not issue, findings of fact and conclusions of law. This accelerated appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015)(permitting an interlocutory appeal from the denial of a motion to compel arbitration under the Federal Arbitration Act); TEX. R. APP. P. 28.1 (classifying appeals from interlocutory orders, when permitted by statute, as accelerated).

## AGREEMENT TO ARBITRATE

█ A party seeking to compel arbitration must establish that: (1) a valid arbitration agreement exists and (2) the claims in issue fall within the agreement's scope. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex.2015). Atwood did not—and does not—dispute the supposition that his claims against Appellants fall within the scope of the arbitration agreement. But he does dispute the notion that a valid and enforceable arbitration agreement exists. As noted above, Atwood contends Appellants cannot rely on the *"MANDATORY ARBITRATION PLAN"* to compel arbitration of his claims against them because they are not parties to the agreement and because the agreement is so one-sided as to be substantively unconscionable. In response to Atwood's contentions, Appellants counter, *inter alia,* that they are parties because the term "Company" in the agreement en-

compasses Senior Living by virtue of its status—first—as Atwood's employer and—second—as "an affiliated company of 12 Oaks" with an economic interest in 12 Oaks. We disagree.

### Standard of Review

We review the trial court's denial of a motion to compel arbitration for an abuse of discretion. *See In re Labatt Food Svc., L.P.*, 279 S.W.3d 640, 643 (Tex.2009)(orig.proceeding). Under this standard, we defer to the trial court's factual determinations supported by the record and review legal questions *de novo*. *Id.*

### Applicable Law

It is undisputed that Appellants did not sign the *"MANDATORY ARBITRATION PLAN."* Ordinarily, parties must sign arbitration agreements to enforce them or be bound by them. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex.2011). But this is not always the case. An arbitration agreement may provide that certain non-signatories are parties to the agreement. *In re Rubiola*, 334 S.W.3d at 224. If the agreement does not expressly identify all the parties to the agreement, the question of whether a valid arbitration clause exists between specific parties is ultimately a function of the intent of the parties, as expressed by the terms of the agreement. *Id.* To determine the parties' intent, we apply ordinary principles of state contract law. *Id.*

### Discussion

The trial court did not abuse its discretion in denying the Appellants' motion to compel arbitration of Atwood's claims against them. Contrary to their assertion, no valid and enforceable arbitration agreement exists between Atwood and them.

Under ordinary contract principles, Appellants are not parties to the arbitration agreement. Because Appellants did not personally sign the arbitration agreement, there is no evidence they made an offer to Atwood, or accepted one from him, to arbitrate any legally-recognized claims arising from their employment relationship. Nor do the terms of the arbitration agreement clearly and unmistakable demonstrate that the parties to this dispute, as opposed to 12 Oaks and Atwood, intended to be bound by the agreement. Nowhere in the documentation provided to Atwood are Appellants mentioned by name. Instead, 12 Oaks is the only entity specifically named in those documents. In the arbitration agreement, 12 Oaks is identified as the "Company," and, by the terms of this plan, an "Employee" is obligated to arbitrate his or her claims against the "Company." In the acknowledgment signed by Atwood, he expressly confirms his assent to the following matters: (1) receiving and reviewing "the 12 Oaks Senior Living Dispute and Resolution Program and Mutual Agreement to Arbitrate Claims[;]" (2) understanding "that the Dispute Resolution Program is mandatory and applicable to all Employees ... [;]" and (3) having "had the opportunity to ask his/her supervisor and 12 Oaks Senior Living management staff any questions he/she may have concerning the Agreement." What these provisions clearly and unmistakably establish is that 12 Oaks and Atwood, not Appellants and Atwood, agreed to arbitrate disputes between them.

As indicated above, Appellants argue they are parties to the arbitration agreement because the agreement expressly defined "Company" to include "the employer" and "any other entity which has or had an economic interest in the Company." In support of their argument, Appellants cite the afore-mentioned *In re Rubiola*. Ap-

pellants' reliance on *In re Rubiola* is misplaced.

*In re Rubiola* stands for the proposition that signatories to an arbitration agreement may identify other parties in their agreement that may enforce arbitration as though they signed the agreement themselves. There, the plaintiffs agreed to purchase a home from Greg Rubiola and his wife pursuant to a standard Texas real estate sales contract without an arbitration clause. *In re Rubiola*, 334 S.W.3d at 222. The transaction was handled by Greg's brother, J.C. Rubiola, "who served as the listing broker for the property." *Id.* After agreeing to purchase the home, the plaintiffs used Greg as their mortgage broker and loan officer, executing a financing agreement with Rubiola Mortgage Company (RMC), a corporation operated by Greg and J.C in their capacities as president and vice-president, respectively. *Id.* The financing agreement contained an arbitration provision, which applied to "any and all controversies between the parties of whatever type or manner" and expressly defined "parties" to include:

> [RMC], and each and all persons and entities signing this agreement or any other agreements between or among any of the parties as part of this transaction. "The parties" shall also include individual partners, affiliates, officers, directors, employees, agents, and/or representatives of any party to such documents, and shall include any other owner and holder of this agreement.

*In re Rubiola*, 334 S.W.3d at 222–23. The financing agreement was signed by J.C. on RMC's behalf, and the plaintiff's signed a form acknowledging J.C.'s dual role as real estate agent and mortgage broker. *Id.* at 223. Greg did not sign the financing agreement.

After purchasing the home, the plaintiffs sued Greg, J.C., and others for al-leged misrepresentations inducing them to buy the home and for failure to make certain repairs to the home. *Id.* Greg and J.C. moved to compel arbitration as non-signatory parties to the arbitration agreement, asserting that, as RMC's officers and representatives, they could rely on the arbitration agreement executed by the plaintiffs and RMC. *Id.* at 223–24. The plaintiffs objected, arguing that J.C. and Greg were not parties to the arbitration agreement because they did not sign it. *Id.* The trial court denied the Rubiolas' motion to compel, a decision upheld by the court of appeals. *Id.* at 223.

The Texas Supreme Court reversed, reasoning that the Rubiolas were entitled to compel arbitration in their capacity as RMC's officers and representatives because: (1) the arbitration agreement explicitly provided that RMC's non-signatory officers and representatives were parties to the agreement; and (2) the language of the arbitration agreement indicated it "was not limited to the financing part of the transaction but rather extended to the real estate sales contract and the [plaintiffs'] complaints regarding that sale." *Id.* at 225–26.

Appellants contend the arbitration agreement here is similar to the one in *In re Rubiola* in that it broadly defines the parties to the agreement to include non-signatories; in this case, Senior Living in its capacities as Atwood's employer and as an affiliated company of 12 Oaks with an economic interest in 12 Oaks. But the underlying principle *In re Rubiola* is that non-signatories may not rely on an arbitration agreement to compel arbitration unless they were acting on behalf of a signatory from which they derive their arbitration rights. *See Baldwin v. Cavett*, 502 Fed.Appx. 350, 353–54 (5th Cir.2012)(analyzing *Rubiola* and reaching this conclusion). In *In re Rubiola*, J.C. and Greg

were able to compel arbitration because they were acting on behalf of RMC, the entity from which they derived their arbitration rights, when they allegedly engaged in the tortious conduct about which the plaintiffs complained. The same cannot be said here. Appellants were not acting on behalf of 12 Oaks when they allegedly engaged in the illegal conduct about which Atwood complained, and 12 Oaks is not an entity from which Appellants can derive their arbitration rights.

Appellants first argue they are non-signatory parties because they derive their arbitration rights from Atwood in their capacity as his "employer." We do not dispute that the agreement provides that " 'Company' means the employer. . . ." But, by the same token, the agreement identifies 12 Oaks as the "Company." Significantly, the agreement does not name Atwood's employer, nor does it define the term "employer." And while the agreement lists in general terms the wide array of parties to which it applies, the only entity identified by name in the documents provided to Atwood is 12 Oaks. Thus, when construed as written and in conformity with its internal logic, the arbitration agreement clearly and unmistakably identifies *12 Oaks as the employer with whom Atwood agreed to arbitrate his disputes.* Conversely, we cannot say that the agreement clearly and unmistakably identifies Senior Living as the entity with whom Atwood agreed to arbitrate his disputes. That Atwood would agree to arbitrate disputes against 12 Oaks is not improbable because he had some type of employment relationship with 12 Oaks, as evidenced by the documents provided to him and by Ashburn's affidavit. Atwood acknowledged that he "had the opportunity to ask his . . . supervisor and 12 Oaks Senior Living management staff any questions [he] may have [had] concerning the Agreement[,]" and Ashburn averred that "[t]he

Plan . . . covers all disputes that an employee may have with 12 Oaks. . . ."

Appellants next argue they are parties because they derive their arbitration rights from 12 Oaks in their capacity as "an affiliated company of 12 Oaks" with an economic interest in 12 Oaks. We do not dispute that the term "Company" in the arbitration agreement is broadly defined to include "any other entity which has or had an economic interest in the Company" and that 12 Oaks has a business relationship with Appellants. But there is no evidence that Appellants have an economic interest in 12 Oaks. Nowhere in his affidavit does Ashburn make such a claim, and the arbitration agreement fails to mention the relationship between Appellants and 12 Oaks. Ashburn merely avers that Appellants are clients of 12 Oaks' management services. Furthermore, there is no evidence that Appellants were acting on behalf of 12 Oaks when they allegedly engaged in the discriminatory conduct about which Atwood complains, and Appellants make no such argument. Indeed, the evidence indicates that Appellants have never acted on 12 Oaks' behalf in their dealings with Atwood. Ashburn states in his affidavit that 12 Oaks is Appellants' agent and that it acted on their behalf in assuming human resources duties at Sunridge at Cambria, including the execution of the arbitration agreement in question here.

In sum, Appellants have failed to establish the existence of a valid and enforceable arbitration agreement to which they are parties as non-signatories. Accordingly, the trial court did not abuse its discretion by denying Appellants' motion to compel arbitration on this basis. Because this basis is sufficient to affirm the trial court's order, our inquiry thus begins and ends here. We therefore decline to address the argument that the agreement is invalid and unenforceable because it is so one-

sided as to be substantively unconscionable. *See* Tex. R. App. P. 47.1.

Appellants' issue is overruled.

### CONCLUSION

The trial court's order denying Appellants' motion to compel arbitration is affirmed.