COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| VIBRA REHABILITATION HOSPITAL OF EL PASO, LLC d/b/a HIGHLANDS | § | No. 08-23-00137-CV |
| REHABILITATION HOSPITAL, SABRA TEXAS HOLDINGS, L.P., | § | Appeal from the |
| and DIANA SCHULTZ, | § | 120th Judicial District Court |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2022DCV2999) |
| RAMIRO ILLARRAMENDI, JR., | § | |
| Appellee. | § | |
| | § | |

## MEMORANDUM OPINION

This case returns us to the recurrent issue of whether a non-signatory to an arbitration agreement can compel arbitration. Ramiro Illarramendi, Jr., and Vibra Healthcare, LLC (Vibra) were signatories to an arbitration agreement to resolve any workplace-injury claim. Illarramendi suffered a workplace injury and later filed suit against Vibra, together with three non-signatories—Vibra Rehabilitation Hospital of El Paso, LLC, d/b/a Highlands Rehabilitation Hospital (Highlands), Diana Schultz (Schultz), and Sabra Texas Holdings, L.P. (Sabra).[1] All these defendants moved to compel arbitration of Illarramendi's workplace-injury claims. The trial court

---

[1] Illarramendi also sued Vibra Healthcare Real Estate Company, LLC, El Paso Healthcare System, Ltd., and HCA Health Services of Texas, Inc., but these parties have been nonsuited.

granted the motion as to Vibra but denied relief to our Appellants—Highlands, Schultz, and Sabra. We reverse as to Highlands because it was Illarramendi's employer and is specifically referenced in the arbitration agreement. We also reverse as to Schultz—the CEO of Highlands—because she was acting in the scope of her agency with Highlands. We affirm as to Sabra, which has no connection to the arbitration agreement and was sued as the premises owner over alleged premises defects.

## BACKGROUND

### A. Factual background

Illarramendi, a maintenance supervisor at Highlands, alleges that he was electrocuted and fell from a ladder while inspecting a light fixture. He asserts these claims against Vibra, Highlands, Schultz, and Sabra:

> Vibra, although not alleged to be Illarramendi's employer, "owed [him] a duty through . . . exercise of control over the details of [his] work," which duty it breached by failing to provide adequate "policies, procedures, and equipment."

> Highlands, for whom Illarramendi "was working in the course and scope of his employment" when the alleged incident occurred, had a duty to "provide sufficient training, assistance, and equipment for [him] to . . . perform his work safely[,]" but failed to do so.

> Schultz, Highlands's CEO, instructed [Illarramendi] "to inspect a light that seemed to be out of order . . . despite [having] knowledge that the hospital was underfunded and understaffed, and without ensuring [he] was qualified and properly equipped[.]"[2]

> Sabra, as "owner" and "possessor" of the premises, "owed . . . a duty of ordinary care in maintaining a safe working environment, including a responsibility to inspect and make safe any dangerous condition or give adequate warning of any hazardous conditions," but failed to do so.

> Illarramendi concedes he elected to participate in Vibra's employee injury benefit plan (the

---

[2] This allegation is found in the factual-background section of Illarramendi's pleading. The pleading's causes-of-action section does not mention Schultz.

Plan), including the arbitration agreement that it contains. The Plan contains these provisions relevant to our dispute:

    1.2    <u>Purpose</u>. The purpose of this Plan is to provide eligible Texas employees of the Company who comply with the requirements specified . . . certain medical and wage continuation benefits in the event of an on-the-job injury . . . .

    2.6    <u>Company</u>. "Company" means Vibra Healthcare, LLC with its princip[al] place of business located at 4600 Lena Drive, Mechanicsburg, PA 17055 or any affiliate or successor thereof that subsequently adopts the Plan.

    2.9    <u>Employee</u>. "Employee" means an individual employed in the regular business of the Company who receives his or her pay on a regular basis by means of a salary or wage directly from the Company. . . .

    10.1    <u>Arbitration</u>. It is agreed that, except provided in Article VII [benefit claims procedure], any and all disputes, claims (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Plan or to the occupational injury, death or disease of a Plan Participant shall be submitted to final and binding arbitration under the Federal Arbitration Act. . . .

    12.4    <u>Employer Information</u>.

    Your Employer's name, address, business telephone number and identification number are:

    Vibra Healthcare, LLC
    4600 Lena Drive
    Mechanicsburg, PA 17055
    (717) 591-5700
    Participating sites identified in Addendum 1

ADDENDUM 1
PARTICIPATING SITES:

Highlands Rehabilitation Hospital
1395 George Dieter Drive
El Paso, TX 79936
Phone: (915) 298-7222
EIN: 47-1033481

Vibra's general counsel, Douglas C. Yohe, testified below that "[Highlands] is a 100% owned subsidiary of Vibra Rehab Holdings, LP," that "Vibra Rehab Holdings, LP and [Vibra] are

3

affiliates due to Brad E. Hollinger . . . owning a supermajority of both," and that "Highlands . . . and Diana Schultz are . . . affiliates of and under corporate control of [Vibra]."

## B. Procedural history

Shortly after Illarramendi filed suit, Vibra and Appellants moved to compel arbitration. Following two hearings, the trial court granted the motion as to Vibra and denied it as to Highlands, Schultz, and Sabra.[3] This interlocutory appeal follows. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 ("In a matter subject to the Federal Arbitration Act . . . a person may take an appeal . . . to the court of appeals from the . . . interlocutory order of a district court . . . under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. [§] 16."); 9 U.S.C. § 16(a)(1)(C) ("An appeal may be taken from . . . an order . . . denying an application . . . to compel arbitration").

## DISCUSSION

Before our Court, Appellants raise four issues, contending that the trial court erred by: (1) denying their motion to compel arbitration as non-signatories to the Plan; (2) not concluding that Schultz can compel arbitration as Highlands's agent; (3) not concluding that Illarramendi's claims are all "factually intertwined," thereby entitling them to compel arbitration; and (4) not staying the case until after the arbitration against Vibra is over. Illarramendi responded with a preliminary challenge that we address first.

## A. Controlling law and standard of review

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims raised fall within the agreement's scope. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010). Whether an arbitration agreement is valid and enforceable

---

[3] Illarramendi does not oppose being compelled to arbitrate his claims against Vibra, who is not a party to this appeal.

4

is a legal question. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the moving party meets its burden of establishing a valid agreement, the burden shifts to the party opposing arbitration to raise a valid defense against its enforcement. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam) (orig. proceeding). Absent evidence of a valid defense, the trial court must compel arbitration. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. Or as our supreme court has noted: "[T]he right to a jury trial is not discretionary. Nor is the right to have an arbitration contract enforced. If the parties have not agreed to arbitration, no trial court has discretion to make them go; if they have agreed to arbitration, no trial court has discretion to let one wriggle out." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193 (Tex. 2007) (orig. proceeding).

"Motions to compel arbitration are ordinarily decided in summary proceedings 'on the basis of affidavits, pleadings, discovery, and stipulations.'" *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 388–89 (Tex. App.—El Paso 2019, no pet.) (quoting *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992)). "However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts." *Tipps*, 842 S.W.2d at 269.

We review a trial court's denial of a motion to compel arbitration for abuse of discretion and defer to its factual determinations if they are supported by the evidence; however, we review its legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *APC Home Health*, 600 S.W.3d at 389. Because here, the trial court did not enter findings of fact or conclusions of law, we must uphold its decision on any appropriate legal theory urged below. *Id.*

5

## B. Must Appellants specifically challenge "implied findings of fact"?

We begin by addressing Illarramendi's argument that because Appellants failed to challenge the trial court's implied findings of fact, this appeal should be decided in his favor without reaching the issues raised by Appellants. As Illarramendi posits, "Appellants have not challenged the sufficiency of the evidence to support the trial court's implied finding that they failed to carry their burden of proof on the disputed fact issues," and "[u]nchallenged findings of fact are binding on the Court[.]" The sole disputed fact issue identified by Illarramendi is whether Appellants "adopted" the Plan.

While we agree unchallenged findings of fact are binding on this Court, we do not agree that a "finding" that a party has failed to carry its burden of proof is a "finding of fact." Rather, this is a conclusion of law. Moreover, and as explained below, we conclude that Highlands presented evidence that it adopted Vibra's plan. We next address the issues raised by Appellants.

## C. Whether Highlands[4] adopted the Plan

While generally only parties to an arbitration agreement may compel arbitration, there are exceptions. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *see also*, *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (listing "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary"). Highlands focuses on one such exception: "signatories to an arbitration agreement may identify other parties in their agreement who may enforce arbitration as though they signed the agreement themselves." *In re Rubiola*, 334 S.W.3d 220, 226 (Tex. 2011) (orig. proceeding).

---

[4] Appellants' first issue globally references all three appellants, but no argument is presented as to Schultz or Sabra. Thus, we address this issue only as to Highlands.

Whether an arbitration agreement can be enforced by a non-signatory depends on the parties' intent as expressed in their agreement. *Id.* at 224. Arbitration agreements are interpreted under traditional contract principles. *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (orig. proceeding). That is, the plain language controls, "[w]ords must be construed 'in the context in which they are used,'" and courts will "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* at 194–95. Further, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* at 195.

Here, it is undisputed that a valid arbitration agreement exists between Illarramendi and Vibra. That agreement is contained in the Plan, whose purpose is to provide "Employees" of "the Company" certain benefits for on-the-job injuries. The Plan defines "Employee" as "an individual employed in the regular business of the Company." It is undisputed that Illarramendi was an employee of Highlands, if not Vibra, at the time of the alleged incident.

The Plan defines "Company" as "Vibra Healthcare, LLC . . . or any affiliate or successor thereof that subsequently adopts the Plan." Douglas C. Yohe, in his capacity as General Counsel for Vibra Healthcare, LLC and its affiliated entities and with knowledge regarding the corporate structure of the same based on his job duties, avers that Vibra Rehabiliation Hospital d/b/a Highlands Rehabilitation Hospital is a 100% owned subsidiary of Vibra Rehab Holdings, LP, and that Vibra Rehab Holdings, LP is an affiliate of Vibra Healthcare, LLC, as the entites have a common supermajority owner.[5] As a result, Illarramendi's argument that Highlands cannot

---

[5] Illarramendi objected to Yohe's affidavit in the trial court, but his objections were overruled. Illarramendi does not challenge that ruling on appeal.

compel arbitration hinges on Highlands not having "adopted" the Plan.

Highlands argues it can compel arbitration because Vibra's plan expressly identifies it as a "participating site" in the Plan. Illarramendi disagrees, contending that Highlands has failed to prove it "adopted" the Plan. In support of this argument, Illarramendi relies on *Golden Age Senior Living of El Paso, LLC v. Atwood*, 486 S.W.3d 44 (Tex. App.—El Paso 2016, no pet.) and *Red Bluff, LLC v. Tarpley*, No. 14-17-00505-CV, 2018 WL 6722346 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet.) (mem. op.). But both cases involve contract language that required specific criteria for an affiliate to fall under the arbitration umbrella—neither of which is required here.

*Golden Age* involved an employer-employee arbitration agreement that conferred arbitration rights on non-signatory employer affiliates who "had an economic interest in" the employer. 486 S.W.3d at 49. The non-signatory parties were denied arbitration rights because they presented no evidence of having such an interest. *Id*. The Plan here, has no comparable language. *Red Bluff* involved an employer-employee arbitration agreement that conferred arbitration rights on non-signatory employer affiliates if a two-step procedure was performed: (1) the employer's board approved the affiliate's adoption of the employer's employee injury benefit plan; and (2) the affiliate itself adopted the Plan by appropriate board resolutions. 2018 WL 6722346, at *6. Because the non-signatory party there failed to present evidence that both steps of the required procedure were performed, it was held to have no arbitration rights. *Id*. at 7. The Plan here contains no comparable requirements.

Rather, the Plan here does not define "adopt." "When a contract leaves a term undefined, we presume that the parties intended its plain, generally accepted meaning." *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Undefined terms are also construed in light of the entire document in which they are contained. *See Pharr-San Juan-Alamo Indep. Sch. Dist. v. Texas Pol.*

*Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 474 (Tex. 2022) (construing term "golf cart" in context of entire pleading). "'Adopt' has multiple definitions[.]" *Kilgore ISD v. Anderson*, No. 12-20-00133-CV, 2020 WL 7635966, at \*5 (Tex. App.—Tyler Dec. 22, 2020, no pet.) (mem. op.) (concluding that its use in the tax code encompasses "to choose or take as one's own; make one's own by selection or assent"; "to vote to accept"; or "to accept or act in accordance with"). Webster's includes several definitions that could also apply here: "to choose or take as one's own; make one's own by selection or assent; . . . to take or receive into any kind of new relationship; . . . to accept or act in accordance with (a plan, principle, etc.)[.]" *Adopt*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY, (2003).

Applying these concepts, the Plan and the record show that Highlands adopted the Plan, and consequently is governed by the arbitration agreement. Highlands is specifically referenced in the Plan on Addendum 1. It is listed on Addendum 1, not just as an address, but as an entity. As reflected in Illarramendi's own naming of the parties in the style of this case, "Highlands Rehabilitation Hospital" is an assumed or trade name for "Vibra Rehabilitation Hospital of El Paso, LLC," and not simply a "location," like "1395 George Dieter Drive." And importantly, the list of participating sites, including Highlands Rehabilitation Hospital, are listed with a unique "EIN" number, which can be understood only as an employer identification number used by the Internal Revenue Service for gathering wage and withholding information.[6] The unique EIN is the clearest indication that the Addendum 1 lists entities, and not just locations.

The addendum is titled "participating sites." The common meaning of participate by dictionary definition includes "to take or have a part or share, as with others; partake; share[.]"

---

[6] *See Gandhi v. Centers for Medicare & Medicaid Servs.*, 665 F.Supp.3d 49, 52 (D.D.C. 2023) ("Employer Identification Number ("EIN"), [is] a type of tax-identification number assigned to businesses by the Internal Revenue Service."); 26 U.S.C.A. § 6109 (describing issuance criteria for EIN and use in taxpayer tax returns).

*Participate*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY, (2003). When reading the term contextually, we conclude that Highlands (as an entity and not location) participates in the employee injury plan. It was acting as the employer— Illarramendi's own pleadings assert that to be the case.[7] By Highlands employing Illarramendi, undertaking to give him direction and control, it took affirmative action to step into the shoes of the "Company" as defined in the Plan. In the context of the entire agreement, it adopted the Plan by playing the role of Employer. *See Atiq v. CoTechno Group, Inc.*, No. 03-13-00762-CV, 2015 WL 6871219, at *5 (Tex. App.—Austin Nov. 4, 2015, pet. denied) (mem. op.) (contract can be adopted "either expressly or by accepting its benefits"); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 423 (Tex. App.—Dallas 2012, no pet.) (same).

Illarramendi counters that Highlands failed to present evidence that it "adopted" the Plan because the record does not include: (1) contracts showing adoption; (2) correspondence showing adoption; or (3) sworn testimony that the Plan was adopted. But Illarramendi does not show that these are the only types of evidence that might be relevant. He also acknowledges that the Plan itself identifies "Highlands Rehabilitation Hospital" as a "participating site," although he contends it "simply lists the location where the incident occurred as 'Highlands Rehabilitation Hospital.'" We reject that construction of the Plan as the participating sites did not list simple geographic locations—but *entities* identified by the EIN used to document wage and withholdings.

Next, Illarramendi argues that there is no evidence that Highlands authorized itself to be an entity "listed as a 'participating site.'" But we see nothing in the Plan suggesting Highlands needed to authorize itself to be so listed. And its participation as the employer would in any event

---

[7] In some cases, pleading that a party is one's employer may alone be enough to trigger an obligation to arbitrate with that party under an employer-employee arbitration agreement. *See In re Macy's Texas, Inc.*, 291 S.W.3d 418, 420 (Tex. 2009) ("As Tomsic agreed to arbitrate with her employer and *purported to sue her employer*, she cannot avoid arbitration by raising factual disputes about her employer's correct legal name.") (emphasis added).

act as acceptance of that designation. Relatedly, Illarramendi argues that "nowhere on page 28 of the Plan does the word 'adopt' or any form thereof exist" and there is no "signature or evidence of conduct by any [Appellant] evidencing adoption." Again, we see nothing in the Plan requiring Highlands to sign anything or engage in any particular conduct to "adopt" the Plan. That is, the Plan requires no method or magic words for it to be adopted, and we see no reason why Highlands's status as a participating site would not suffice to establish that it in fact adopted the Plan.

Further, were we to hold that adoption of the Plan requires steps not specified in its text, we would be adding terms to the contract that the parties choose not to include. We would also render meaningless both the Plan's language "Participating sites identified in Addendum 1" and Addendum 1 itself, neither of which has any apparent purpose other than to identify affiliates of Vibra which have adopted and implemented the Plan. In construing contractual language, we must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *In re Whataburger*, 645 S.W.3d at 195.

Finally, Illarramendi argues that the facts in *Red Bluff* were more conducive to finding that the employee injury benefit plan there had been adopted—the non-signatory affiliate proffered an affidavit expressly stating it had adopted the Plan—yet this evidence was held insufficient. Yet *Red Bluff* involved a plan with a specific two-step procedure under which an employer affiliate had to affirmatively opt into the arbitration agreement. 2018 WL 6722346, at *6. At best, the affiliate there presented evidence of compliance with only part of one step. *Id.* at *7. Here, in contrast, no particular procedure for adopting the Plan existed, no "affirmative opt-in" steps were required, and Highlands is expressly named as a participating site. We conclude that Highlands

11

established it adopted the Plan and thus is entitled to compel arbitration of Illarramendi's workplace-injury claims.

### D. Whether Schultz has a right to compel arbitration

As we consider Highlands holds a right to compel arbitration, we turn to whether Schultz, its CEO, holds the same right.

Another way that a non-signatory can compel compliance with an arbitration agreement is by showing "agency." *Jody James Farms, JV v. Altman Grp., Inc*., 547 S.W.3d 624, 633 (Tex. 2018). As the Texas Supreme Court explains, "a contracting party generally cannot avoid unfavorable clauses by suing the other party's agents"; thus, "an agent of a signatory may sometimes invoke an arbitration clause against another signatory." *Id*. at 635 (quotation marks omitted). The exception recognizes the idea that "it is impractical to require every corporate agent to sign or be listed in every contract." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (orig. proceeding). To establish that right, a non-signatory agent must "show it was subject to the principal signatory's control and authorized to act as its agent." *Jody James Farms, JV*, 547 S.W.3d at 635.

Here, Yohe's affidavit states that non-signatory Highlands and signatory Vibra have a common owner and are affiliates. The affidavit adds that both Highlands and Schultz were under Vibra's corporate control. Furthermore, Illarramendi acknowledges that Schultz was Highlands's CEO, meaning she was authorized to act as its agent as well as subject to its control. *See Cobra Acquisitions LLC v. AL Glob. Services, LLC*, No. 04-19-00410-CV, 2020 WL 1931599, at *5 (Tex. App.—San Antonio Apr. 22, 2020, no pet.) (mem. op.) (holding corporate CEO who was authorized to act as agent and under signatory's control was covered by arbitration agreement).

As a result, Schultz argues, she has a right to compel arbitration under *In re Vesta Ins.*

*Grp., Inc.*, 192 S.W.3d 759 (Tex. 2006), which held that agents of a non-signatory affiliate were entitled to invoke an arbitration clause given that the affiliate was so entitled. 192 S.W.3d at 764. As the *Vesta* court reasoned:

> [C]orporations must act through human agents. . . . When contracting parties agree to arbitrate all disputes "under or with respect to" a contract (as they did here), they generally intend to include disputes about their agents' actions because "[a]s a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract [and would thus not comport with federal and state policy regarding arbitration].

*Id.* at 762 (citation omitted).

Illarramendi does not argue *Vesta*'s reasoning would not apply. Instead, he claims that (1) Highlands cannot show it is a party to the arbitration, thus Schultz's agency relationship with Highlands is moot; and (2) Schultz's "exact argument" was overruled in *Golden Age*.

But we have already concluded above that Highlands could compel arbitration as a participant in the Plan, so too would its agents, like Schultz. Stated otherwise, Illarramendi offers no reason why Schultz cannot compel arbitration if Highlands can do so. Further, *Golden Age* involved a different scenario. There, the non-signatory parties failed to prove they: (1) had an economic interest in the signatory employer, and (2) were agents of the employer. 486 S.W.3d at 49. Here, Schultz has shown, through Yohe's affidavit, that she operates under Vibra's corporate control. And while Illarramendi contends that Yohe's affidavit "demonstrates that Vibra . . . does not own or control any part of the parties seeking to compel arbitration," this contention cannot be squared with the affidavit's plain statement that Highlands and Schultz are "affiliates of and under corporate control of Vibra[.]"

We conclude that Schultz, as Highlands's agent, is entitled to compel arbitration of

13

Illarramendi's workplace-injury claims under *Jody James Farms* and *Vesta*, and is not precluded from doing so by *Golden Age*.

### E.   Whether intertwining of claims entitles Sabra[8] to compel arbitration

Sabra argues it could compel arbitration because Illarramendi's claims against it are "based on the same operative facts and are substantially similar and intertwined with the claims [Illarramendi] has asserted against Vibra[.]" In support of this argument, Sabra cites *Texas Petrochemicals LP v. ISP Water Mgmt. Services LLC*, 301 S.W.3d 879 (Tex. App.—Beaumont 2009, no pet.) and *Natgasoline LLC v. Refractory Constr. Servs., Co.*, 566 S.W.3d 871 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Neither case is controlling, nor so persuasive for us to adopt the doctrine in this district for this set of facts.

*Texas Petrochemicals* did not address whether a non-signatory might be able to compel arbitration. Instead, the case decided whether *claims* outside the scope of an arbitration agreement might still be required to be arbitrated. 301 S.W.3d at 885. Thus, *Texas Petrochemicals* is of little assistance here. The *Natgasoline* court discusses an "intertwined-claims theory" as recognized by the United States Second Circuit Court of Appeals, but it also notes this theory has not been adopted by the Texas Supreme Court. 566 S.W.3d at 888.[9] Moreover, the Second Circuit's theory does not apply "whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them." *Id*.

---

[8] Appellants' Issue Three mentions all three Appellants, but we have already concluded that Highlands and Schultz are entitled to compel arbitration. Thus, we address this issue only as to Sabra, and express no opinion on how the intertwining of claims as between Vibra and Highlands might provide a secondary basis for Highlands (and Schultz) to compel arbitration.

[9] Sabra cites an earlier Fourteenth Court of Appeals' opinion in *Cotton Commercial USA v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 105 (Tex. App.—Houston [14th Dist.] 2012, no pet.) for the proposition that the Texas Supreme Court recognizes an 'intertwined-claims' test. Our reading of the Texas Supreme Court's decision, however, better comports with the Fourteenth Court's later 2018 opinion in *Natgasoline*, that it has not. 566 S.W.3d at 888 (citing *Jody James Farms, JV v. Altman Group, Inc*., 547 S.W.3d 624, 639 (Tex. 2018)).

Instead, "the relationship must be closer than merely independent participants in a business transaction." *Id*. at 889.

Here, Sabra makes no argument that its relationship with Vibra or any other party entitled to arbitrate is closer than that between independent parties to a business transaction. On this record, it is no more than the landlord to Vibra or Highlands. Sabra has not shown itself to have a right to compel arbitration of Illarramendi's workplace-injury claims.

### F. Whether a stay is required

Appellants' last issue, relevant now only to Sabra, is whether the trial court should have stayed the case while the arbitration proceeds against Vibra. A stay would be required when "the same issues must be decided both in arbitration (against [a signatory]) and in court (against [a non-signatory])." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding). "[T]he Federal Arbitration Act generally requires the arbitration to go forward first; arbitration should be given priority to the extent it is likely to resolve issues material to this lawsuit." *Id*. (quotation marks omitted); *See also In re Merrill Lynch & Co.*, 315 S.W.3d 888, 891 (Tex. 2010) (orig. proceeding) (parallel litigation involving non-signatory to arbitration agreement should be stayed if it "threaten[s] to undermine or moot the arbitration").

Under Issue Four, Sabra asks us to review the trial court's decision that denied a stay when three, and not one defendant, remained in the litigation. Because we conclude that Highlands and Schultz should also join the arbitration (and leave the litigation), the calculus for a stay may (or may not) change. Accordingly, we express no view on whether a stay of trial court proceedings might be required under these new circumstances, assuming either side requests such relief after the case is remanded.

## CONCLUSION

We reverse the trial court's denial of the motion to compel arbitration in regard to Highlands and Schultz, but affirm denial of the motion in regard to Sabra, and remand the case to the trial court for further proceedings consistent with this opinion.

JEFF ALLEY, Chief Justice

May 17, 2024

Before Alley, C.J., Palafox and Soto, JJ.
Palafox, J., concurring and dissenting in part