**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00393-CV**
_____

**MOBIL OIL FEDERAL CREDIT UNION, Appellant**

**V.**

**CRAIG SMITH, Appellee**

_____

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-210,066**

_____

**MEMORANDUM OPINION**

Appellant Mobil Oil Federal Credit Union (MFCU) appeals the trial court's order denying MFCU's motion to compel arbitration. Appellee Craig Smith (Smith), a member and account holder at MFCU, sued MFCU for personal injuries he allegedly sustained when a chair he was sitting in at MFCU broke and collapsed. We reverse the trial court's order denying MFCU's motion to compel arbitration.

1

## Background

In Smith's Original Petition, he alleged that on February 16, 2022, while he was at the MFCU facility transacting business, a chair he was sitting in broke and collapsed. Smith named MFCU as a defendant and alleged that the injuries, damages, and losses he suffered from the incident were proximately caused by MFCU's negligence.[1] MFCU filed its First Amended Answer, generally denying Smith's claims and asserting numerous affirmative defenses, including invoking its right to compel arbitration under the terms of an arbitration agreement.

MFCU filed a motion to compel arbitration, arguing that at the time of the incident, Smith maintained an account with MFCU and thereby "accepted certain terms and conditions as well as periodic modifications thereto." MFCU attached a business records affidavit with exhibits attached thereto. MFCU argued in the motion that the three Statements of Account (each attached to the affidavit)[2] were sent to Smith's address, that the Statements of Account included a notification about changes in the terms and conditions of the accounts adding an arbitration provision,

---

[1] After MFCU filed the motion to compel arbitration, Smith amended his petition to add the distributor and manufacturer of the chair as defendants, but those defendants are not parties to this appeal.

[2] All three Statements of Account are addressed to the same address, but each Statement of Account has different account holder names, one for "Craig L Smith[,]" one for "Centersect Enterprises LLC[,]" and one for "Susan P Smith[.]" On the Statement of Account in the name of "Susan P Smith[,]" "Craig L Smith" is listed as a "Joint Owner[,]" and on the Statement of Account in the name of "Craig L Smith[,]" "Susan P Smith" is listed as a "Joint Owner[.]"

and that attached to each Statement of Account was an arbitration provision that provided the account owner an opportunity to opt out of arbitration without any loss of the rights or benefits of the account. According to MFCU, Smith did not opt out. In its motion to compel arbitration, MFCU alleged that the parties were bound by a valid arbitration agreement because Smith accepted the arbitration provision, he did not timely opt out of the provision, and he accepted the benefits associated with having obtained his account at MFCU. MFCU argued the arbitration agreement is enforceable, covers "any dispute" between the parties, and states that claims shall be resolved through binding arbitration by the AAA. MFCU also claimed that Smith had alleged over $1,000,000 in damages in the suit that he filed in district court, and he wasn't entitled to sue MFCU because MFCU had not waived its right to arbitration.

To support its motion to compel arbitration, MFCU filed an affidavit signed by Karrie Harris. Harris states she is a custodian of records and Assistant Vice President, and includes the following, in relevant part:

> "My name is Karrie Harris. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated. I am a custodian of the records of Mobiloil Credit Uni[]on ("Mobiloil") and am familiar with the manner in which the Mobiloil records are created and maintained by virtue of my duties and responsibilities. I currently hold the position/title known as AVP of Risk/Compliance. Attached to and incorporated into this affidavit are records from Mobiloil. These referenced records are kept by Mobiloil in the regular course of business, and it was the regular course of business of Mobiloil for an employee or representative of Mobiloil, with knowledge of the act,

3

event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. These referenced records are the original or exact duplicates of the original. These records were made by, or from information transmitted by, one or more persons with knowledge of the matters set forth, or it is the regular practice of Mobiloil for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them. These records were kept in the course of regularly conducted business activity, or it is the regular practice of Mobiloil to keep this type of record in the course of regularly conducted business activity. The records attached hereto are trustworthy recordings of Mobiloil's activities and records based on the routine practices of Mobiloil stated or otherwise reflected in this affidavit and the referenced records."

These records are numbered and described as noted below:

1. Statement of Account for 12/1/21—12/31/21 of Craig L. Smith;
2. Statement of Account for 12/1/21—12/31/21 of Centersect Enterprises, LLC;
3. Statement of Account for 12/1/21—12/31/21 of Susan P. Smith.

The account statements are attached to the affidavit as exhibits A1, A2, and A3. The first three pages of A1 and A2 and the first two pages of A3 contain the December account statements for each account described in Harris's affidavit, and each statement shows what MFCU states is Smith's address at the top of the first page. The following statement appears at the top of the first page on each of the statements attached to Harris's affidavit:

PLEASE NOTE: Your monthly statement contains an important change in terms with an arbitration provision and right to opt out. Please read it carefully.

4

Behind each monthly statement is a document that provides the following, in relevant part:

IMPORTANT CHANGE IN TERMS
<u>Please Read This Notice Carefully</u>

1. The following Arbitration provision is added as a new section at the end of the Mobiloil Federal Credit Union Membership and Account Agreement, which shall thereafter be known as the Membership, Account and Arbitration Agreement ("Member Agreement"). *You can opt out of the Arbitration and Class Action Waiver provision as provided below and you will not lose any of the rights and benefits of your accounts.*

ARBITRATION

You and we agree to attempt to informally settle any disputes arising out of, affecting, or relating to your accounts, any products or services we have provided or offered to you, or any aspect of your relationship with us. If that cannot be done, you and we agree that any claim or dispute between us ("Claim") that is filed or initiated after the Effective Date (as defined below) of this Arbitration provision, even if the Claim arose prior to the Effective Date, shall, at the election of either you or us, be resolved by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its applicable rules and procedures for consumer disputes ("Rules"), whether such Claim is in contract, tort, statute, or otherwise. . . .

AS A RESULT, IF EITHER YOU OR WE ELECT TO RESOLVE A PARTICULAR CLAIM THROUGH ARBITRATION, YOU WILL GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS UNDER THIS AGREEMENT (EXCEPT FOR CLAIMS BROUGHT INDIVIDUALLY WITHIN SMALL CLAIMS COURT JURISDICTION, SO LONG AS THE CLAIM REMAINS IN SMALL CLAIMS COURT). This Arbitration provision shall be interpreted and enforced in accordance with the Federal Arbitration Act as set forth in Title 9 of the U[.]S. Code to the fullest extent possible, notwithstanding any state law to the contrary and regardless of the origin or nature of the Claim. . . .

SELECTION OF ARBITRATOR. The neutral arbitrator shall be selected in accordance with the Rules, and shall have experience and knowledge in financial transactions. If AAA is unavailable to resolve the Claim, and if you and we do not agree on a substitute, then you can select the appropriate forum for the Claim.

EFFECTIVE DATE. For members of the credit union as of 11:59 p.m. (central standard time), January 2, 2022, this Arbitration Agreement is effective upon the 31st day after we provide it to you ("Effective Date"), unless you opt-out within the 31-day period in accordance with the requirements of the RIGHT TO OPT-OUT provision below. If you receive your statements by mail, then the Arbitration Agreement was provided to you when it was mailed. If you receive your statements electronically, then it was provided to you when you were sent notice electronically. For all other members of the credit union, this Arbitration Agreement is effective immediately and there is no right to opt-out.

. . . .

RIGHT TO OPT-OUT. For members of the credit union as of 11:59 p.m. (central standard time), January 2, 2022, you have the right to opt-out of this Arbitration provision and it will not affect any other terms and conditions of your relationship with the credit union. To opt out, you must notify us in writing of your intent to do so before the Effective Date. Your opt-out will not be effective and you will be deemed to have consented and agreed to the Arbitration Agreement unless your notice of intent to opt out is received by us in writing (via mail) at: Mobiloil Federal Credit Union; ATTN: Arbitration Opt-Out (TPB); 3535 Calder Ave., Suite 200; Beaumont, Texas 77706; (via email) at: MOFCUarboptout@mofcu.org. Your notice of intent to opt out can be a letter that is signed by you or an email sent by you that states "I elect to opt out of the Arbitration Agreement" or any words to that effect. For all other members of the credit union, this Arbitration Agreement is effective immediately and there is no right to opt-out.

Smith filed a Response to Defendant's Motion to Compel Arbitration (the Response), and he included an objection to Exhibit A "to the extent it is

6

unauthenticated, inadmissible hearsay, and speculative." Specifically, in the Response he argued as follows:

> As an initial matter, Plaintiff objects to Defendant's Exhibit A to the extent it is unauthenticated, inadmissible hearsay, and speculative. The evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment.[] Under the summary judgment standard, copies of documents must be authenticated to constitute competent summary judgment evidence.
>
> Here, Defendant attached a Business Record Affidavit signed by Ms. Karrie Harris, the purported custodian of records for Mobiloil. Ms. Harris claims Exhibit A contains "exact duplicates" of Mobiloil business records.[] Plaintiff objects to the authenticity and admissibility of Defendant's Exhibit A. Mobiloil failed to authenticate a signed copy of any "agreement".

Smith did not obtain a ruling from the trial court on his evidentiary objections.

Smith also argued in his response that MFCU could not prove that an enforceable arbitration agreement exists because MFCU could not establish that the contract was properly executed under Texas law, as required by Section 2 of the Federal Arbitration Act (FAA).[3] According to Smith, MFCU could not produce a document signed by Smith either agreeing to the arbitration agreement or evidencing that he reviewed the arbitration agreement, MFCU could not prove that Smith received the Notice of the Arbitration Agreement or that it was actually attached to the account

---

[3] Under the summary judgment standard applicable here, copies of documents may be authenticated by a business records affidavit. *See* Tex. R. Evid. 803(6), 902(10); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 270 (Tex. 1992) (orig. proceeding) (relying on summary judgment precedent to hold that the trial and appellate courts must accept as true the clear, direct, and positive evidence of an undisputed affidavit supporting a motion to compel arbitration).

summaries, and there is no evidence that Smith received or read the Notices attached to Harris's affidavit that were allegedly sent to Smith's address with the Statements of Account. Smith argued that MFCU could not prove a meeting of the minds between MFCU and Smith because there is no evidence that Smith consented to, agreed to, or signed in person or electronically, MFCU's arbitration addendum. Smith argued that the opt out provision renders the contract invalid for lack of mutuality.[4] Citing to section 171.002 of the Texas Civil Practice and Remedies Code, Smith also argued that the arbitration agreement was invalid under Texas law because Texas prohibits arbitration of personal injury claims. Smith also alleged the premises liability dispute does not fall within the arbitration provision because, according to Smith, "[t]he arbitration provision applies to 'members and account holders' for disputes affecting their accounts or services provided by [MFCU]." In support of this argument, Smith relied on the fact that "the arbitration provision provides for a "'neutral arbitrator' that 'shall have knowledge in financial transactions[,]'" and not personal injury.

---

[4] Smith abandons this argument in his Appellee's brief, and he did not present any evidence to the trial court in support of this defense. We note that "when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). "[A]rbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008).

MFCU filed a Reply in Support of Motion to Compel Arbitration and argued because Smith contractually agreed to be bound by the FAA, the Texas Arbitration Act's provision exempting personal injury claims from arbitration does not apply to this case. MFCU argued that a valid arbitration agreement exists because MFCU properly authenticated the documents, and the documents show MFCU mailed the notices of arbitration to Smith's address with the Statements of Account, and Smith never opted out of the arbitration provision. MFCU further argued that when the agreement is a written agreement and it is agreed to by the parties as it was here, the Texas Supreme Court has concluded a signature is not required by the FAA or the TAA.[5] MFCU asserted that notice of the arbitration provision was mailed to Smith, he did not opt out of the provision as provided for in the agreement, and his continued use of his MFCU account constituted acceptance of the terms of the arbitration. MFCU alleged that the dispute falls within the arbitration provision because the provision applies to "any dispute" between the parties. According to MFCU, Harris's business records affidavit meets the requirements of Rule 902(10) of the

---

[5] MFCU cited to *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding) (per curiam); *In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) (per curiam); *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 n.5 (Tex. 2005) (per curiam); *Wright v. Hernandez*, 469 S.W.3d 744, 760 (Tex. App.—El Paso 2015, no pet.); *In re Brown & Root, Inc.*, No. 05-98-00689-CV, 1998 Tex. App. LEXIS 3676, at *4 (Tex. App.—Dallas June 18, 1998, orig. proceeding); *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 384 (Tex. App.— Houston [14th Dist.] 1993, writ denied).

9

Texas Rules of Evidence, and Smith offered no affidavits or documents as evidence to support his argument that the dispute should not be submitted to arbitration.

After a non-evidentiary hearing, the trial court denied MFCU's motion. MFCU appeals from the trial court's denial of MFCU's motion to compel arbitration.

Standard of Review and Applicable Law

We review a trial court's ruling on a motion to compel arbitration for an abuse of discretion. *See Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642-43 (Tex. 2009). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). We defer to a trial court's factual findings and review the trial court's legal determinations de novo, including questions of contract interpretation, and we should not reverse because we might have decided the issue differently. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985); *Wagner*, 627 S.W.3d at 283; *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 642-43; *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019) ("We construe contracts under a de novo standard of review."). Whether a valid arbitration agreement exists and whether the claims in dispute fall within the scope of the arbitration agreement are legal questions subject to de novo

10

review. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643. When, as here, the trial court did not issue written findings of fact or conclusions of law, we affirm the trial court's judgment "'if it can be upheld on any legal theory that finds support in the evidence.'" *Sam Houston Elec. Coop., Inc. v. Berry*, 582 S.W.3d 282, 288 (Tex. App.—Beaumont 2017, no pet.) (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

A party seeking to compel arbitration has the initial burden of proof to establish that a valid arbitration agreement exists and that the claims are within the agreement's scope. *See Wagner*, 627 S.W.3d at 282; *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). While there is a strong presumption favoring arbitration, the presumption only arises after the party seeking to compel arbitration proves that a valid arbitration agreement exits. *J.M. Davidson*, 128 S.W.3d at 227. Ordinary principles of state contract law determine whether a valid agreement to arbitrate exists. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738. After the proponent of arbitration has made the required showings, the burden then shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Henry*, 551 S.W.3d at 115; *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014).

The evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment. *In re Estate of Guerrero*, 465 S.W.3d 693, 699-700 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations if the material facts are not controverted. *Id.* at 700; *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding). Thus, the party alleging an arbitration agreement exists must present summary judgment proof that an agreement to arbitrate requires arbitration of the dispute. *Jack B. Anglin Co.*, 842 S.W.2d at 269; *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). The party resisting a motion for summary judgment may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *Jebbia*, 26 S.W.3d at 757. If a material issue of fact is raised, an evidentiary hearing is required. *Jack B. Anglin Co.*, 842 S.W.2d at 269.

Whether an issue falls within the scope of an arbitration agreement generally depends upon the wording of the arbitration agreement, and any doubts as to whether an issue falls in the scope of the arbitration should be resolved in favor of arbitration. *Henry*, 551 S.W.3d at 115-16. To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather

than the legal causes of action asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001).

Analysis

In one appellate issue, MFCU argues that the trial court erred when it denied MFCU's motion to compel arbitration because MFCU presented undisputed evidence establishing that Smith and MFCU agreed to arbitrate "any claim or dispute between us." According to MFCU, it proved the existence of an arbitration agreement by presenting a business records affidavit which proved up and authenticated Smith's December 2021 Statement of Account for his MFCU account, and his Statement of Account included a copy of the arbitration provision. According to MFCU, the Statement of Account and the arbitration provision apprised Smith of his right to opt out of arbitration, and Smith did not allege or present evidence that he opted out. MFCU argues that, although Smith argued in opposition to the motion to compel that MFCU provided no evidence that Smith read or received (or had the opportunity to even read) the notices regarding the arbitration clause, Smith failed to raise a genuine issue of material fact as to the existence of the arbitration agreement because he did not deny agreeing to the arbitration provision and he did not provide evidence by contrary affidavit showing that he did not agree to the arbitration agreement. MFCU also contends that the arbitration agreement applies to

Smith's claim because Smith and MFCU agreed to arbitrate "any claim or dispute between us . . . whether such claim is in contract, tort, statute or otherwise."

Smith argues MFCU failed to meet its burden to demonstrate the existence of a valid arbitration agreement, and he argues that his claims are outside the scope of the alleged arbitration agreement. Smith contends that as to the alleged arbitration agreement, MFCU had the burden to provide evidence of the following elements required to form a valid and binding contract in Texas: (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration. According to Smith, MFCU presented no evidence that Smith signed the arbitration agreement, there is no evidence in the record to memorialize Smith's assent to or the awareness of the alleged arbitration agreement, and no evidence that Smith read, received, or had an opportunity to read the alleged arbitration agreement or its notice. Smith contends that MFCU provided no evidence of when Smith received the arbitration provision, and Smith did not have to produce any evidence in response to MFCU's motion to compel arbitration. Smith also argues that his personal injury claims against MFCU are outside the scope of the alleged arbitration agreement because they "have nothing to do with his credit union account, or the products or services [MFCU] offers [Smith] as part of its credit union[,]" and that language in the agreement requiring this matter to be arbitrated by someone with "knowledge in

14

financial transactions[]" demonstrates "the absurdity of [MFCU]'s incongruous position."

Our first inquiry is to determine if MFCU met its initial burden of proof to establish that a valid arbitration agreement exists. *See Wagner*, 627 S.W.3d at 282; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *J.M. Davidson, Inc.*, 128 S.W.3d at 227. MFCU relies upon Harris's affidavit and the attachments to the affidavit for proof that a valid arbitration agreement exists. In that affidavit, Harris states the account statements and arbitration provision notices that were attached as exhibits to Harris's affidavit are originals or exact duplicates of originals and that the documents were kept by MFCU in its regular course of business. MFCU contends the statements attached bore Smith's address, the statements referenced the inclusion of the arbitration clause that followed each statement in a separate document, and the separate document informed Smith of his opportunity to opt out of arbitration and notified Smith that the arbitration clause would take effect on January 2, 2022, if he did not opt out. According to MFCU, the arbitration agreement which was attached to each statement was authenticated as a business record by Harris's affidavit. MFCU argues that it met its burden and established a binding arbitration agreement, and Smith presented no evidence showing that he opted out. MFCU argues that the business records affidavit and attachments thereto presented

15

"all the evidence MFCU was required to present to establish existence of the arbitration agreement."

"Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). That said, under the Federal Arbitration Act and Texas law, an arbitration agreement may still be enforced even if it is not signed by the parties if the agreement is written and its terms are agreed to by the parties. *See In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding) (per curiam); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 & n.5 (Tex. 2005) (per curiam) (citing 9 U.S.C. § 3; Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a) and noting that the Texas Arbitration Act requires signature for contracts of less than $50,000 or personal injury claims); *see also In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) (per curiam) (observing that "[t]he FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed."); *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (holding arbitration clause was accepted by continued employment). When an arbitration agreement is governed by the Texas Arbitration Act (TAA), the Act does not allow for the arbitration of personal injury claims unless the arbitration provision is in writing, and the agreement is signed by each party and each party's attorney. Tex. Civ. Prac. & Rem.

16

Code Ann. § 171.002(a)(3), (c)(1-2). It is undisputed that the parties here did not comply with section 171.002(c)(1-2). That said, the FAA does not exclude the arbitration of personal injury claims. *See* 9 U.S.C. §§ 1-16; *see also In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding). So, if the arbitration agreement is governed by the FAA, the personal injury section of 171.002 does not control. *See In re Jim Walter Homes, Inc.*, 207 S.W.3d at 896.

Here, MFCU argues that it authenticated Smith's December 2021 account statement and accompanying arbitration provision with a business record affidavit under Rule 902(10) of the Texas Rules of Evidence. In the trial court, Smith challenged Exhibit A attached to Harris's affidavit, but Smith failed to obtain a ruling on his objections from the trial court.

A party can satisfy its evidentiary burden to prove an arbitration agreement's existence by submitting authenticated copies of an agreement containing an arbitration clause. *DISH Network L.L.C. v. Alexander*, No. 13-20-00240-CV, 2021 Tex. App. LEXIS 5823, at *7 (Tex. App.—Corpus Christi–Edinburgh July 22, 2021, pet. denied) (mem. op.); *see also Heritage Numismatic Auctions, Inc. v. Stiel*, No. 05-16-00299-CV, 2016 Tex. App. LEXIS 13424, at *5 (Tex. App.—Dallas Dec. 16, 2016, no pet.) (mem. op.) ("Before documents may be used as evidence, they must be authenticated as genuine."). To satisfy the authentication requirement, the

proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Tex. R. Evid. 901(a). In a summary proceeding, a properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so that they may be considered as evidence. *See In re Estate of Guerrero*, 465 S.W.3d at 704; *see also Jack B. Anglin Co.*, 842 S.W.2d at 270 (relying on summary judgment precedent to hold that the trial and appellate courts must accept as true the clear, direct, and positive evidence of an undisputed affidavit supporting a motion to compel arbitration). An arbitration agreement may be self-authenticated through a business record affidavit that complies with Rule 902(10) of the Texas Rules of Evidence. *See, e.g.*, *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 Tex. App. LEXIS 9326, at *13 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.) (defendant met its burden by presenting a copy of an arbitration agreement authenticated by a business records declaration); *Toyota of Richardson v. Kouros*, No. 05-22-00019-CV, 2022 Tex. App. LEXIS 7222, at *8 (Tex. App.—Dallas Sept. 27, 2022, no pet.) (mem. op.) (same).

Harris's affidavit establishes the authenticity of the documents attached to her affidavit. Harris's affidavit establishes that the attached documents are originals or exact duplicates of originals, and that the documents were maintained by MFCU in its regular course of business. The authenticated documents attached to the affidavit include three December 2021 Statements of Account, each bearing the address

18

MFCU alleges is Smith's address and notifying the account holder that the "monthly statement contains an important change in terms with an arbitration provision and right to opt out[,]" and a notice and arbitration provision is attached to each statement. The authenticated arbitration agreement attached to the three Statements of Account states that "[i]f you receive your statements by mail, then the Arbitration Agreement was provided to you when it was mailed[,]" and "[i]f you receive your statements electronically, then it was provided to you when you were sent notice electronically." If a party's uncontroverted affidavit is clear, direct, and positive, the court must accept it. *Jack B. Anglin Co.*, 842 S.W.2d at 270. MFCU bore the burden to prove that Smith received notice of the arbitration provision *only if* MFCU's motion to compel arbitration and Smith's response presented conflicting evidence as to whether Smith received notice of the arbitration agreement. *See Stagg Rests., LLC v. Serra*, No. 04-18-00527-CV, 2019 Tex. App. LEXIS 1013, at *7 (Tex. App.—San Antonio Feb. 13, 2019, no pet.) (mem. op.) (citing *Jack B. Anglin Co.*, 842 S.W.2d at 269; *In re MP Ventures of S. Tex., Ltd.*, 276 S.W.3d 524, 529 (Tex. App.—San Antonio 2008, orig. proceeding)). On this record, Smith has not disputed that he received the arbitration agreement, and he has not disputed that the address on the monthly statements is his address. The trial court was required to accept MFCU's uncontroverted evidence that Smith received the arbitration agreement when he received his monthly statement. *See Jack B. Anglin Co.*, 842 S.W.2d at 270.

19

Accordingly, MFCU carried its initial burden to prove the existence of a valid arbitration agreement. *See Wagner*, 627 S.W.3d at 282; *In re Rubiola*, 334 S.W.3d at 223.

Having concluded a valid agreement between MFCU and Smith to arbitrate under the FAA exists, our next inquiry must be to determine whether the claims asserted by Smith fall within the arbitration provision. *See Wagner*, 627 S.W.3d at 282-83; *In re Rubiola*, 334 S.W.3d at 223; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *J.M. Davidson, Inc.*, 128 S.W.3d at 227. We resolve any doubts about the arbitration provision's factual scope in favor of arbitration. *See Henry*, 551 S.W.3d at 115-16; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754. Under the arbitration provision here, MFCU and Smith "agree to attempt to informally settle any disputes arising out of, affecting, or relating to [Smith's] accounts, any products or services [MFCU has] provided or offered to [Smith], or any aspect of [Smith's] relationship with [MFCU,]" and that if that cannot be done, MFCU and Smith agreed that "any claim or dispute" between them filed or initiated after the effective date of the arbitration provision must be submitted to binding arbitration upon election by either MFCU or Smith "whether such Claim is in contract, tort, statute, or otherwise." Smith's factual allegations in the Original Petition are that "[o]n February 16, 2022, Plaintiff went to a Mobil Oil Federal Credit Union facility to transact business[,] . . . was offered a chair in which to sit, and while doing so, the

20

chair broke and collapsed, causing injury, damage, and loss to Plaintiff." Considering the arbitration provision's broad language stating that any claim or dispute between MFCU and Smith "whether such Claim is in contract, tort, statute, or otherwise[]" must be submitted to binding arbitration upon election by either MFCU or Smith, and because Texas courts resolve any doubts about an arbitration agreement's scope in favor of arbitration, we conclude that Smith's factual allegations fall within the scope of the claims the parties agreed to arbitrate. *See Henry*, 551 S.W.3d at 115 (noting that any doubts about an arbitration agreement's scope are resolved in favor of arbitration); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754-55 (arbitration agreement covered claims because it stated it covers "'all disputes, claims, or other matters in question arising out of or relating to this Loan, its interpretation, validity, performance, or the breach thereof'" and that "'the scope of arbitrability is broad and includes, without limitation, contractual, tort, statutory, and case law claims.'"). Although the arbitration agreement here provides in a different section titled "Selection of Arbitrator" that the arbitrator selected "shall have experience and knowledge in financial transactions[,]" this language does not limit the broad language in the "Arbitration" section which defines the type of and scope of the disputes that are governed by the arbitration agreement.

To summarize, based on the evidence in the record, we conclude MFCU met its evidentiary burden to establish the existence of a valid, enforceable arbitration

agreement and that the disputed claim falls within the scope of that agreement. *See Wagner*, 627 S.W.3d at 282-83; *In re Rubiola*, 334 S.W.3d at 223. The burden then shifted to Smith to raise an affirmative defense to enforcing arbitration. *Henry*, 551 S.W.3d at 115; *Venture Cotton Coop.*, 435 S.W.3d at 227. Smith failed to present evidence supporting any defense to arbitration, and therefore the trial court had no discretion but to compel arbitration and stay its own proceedings. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753-55.

We conclude that the trial court abused its discretion in denying MFCU's motion to compel arbitration, and we sustain MFCU's issue. We reverse the trial court's order denying MFCU's motion to compel arbitration, and we remand the cause to the trial court with instructions to render an order compelling arbitration.

REVERSED AND REMANDED.

LEANNE JOHNSON
Justice

Submitted on September 13, 2023
Opinion Delivered February 15, 2024

Before Horton, Johnson and Wright, JJ.