

## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| MOUNTAIN VIEW HEALTH & REHABILITATION CENTER, INC., CREATIVE SOLUTIONS IN HEALTHCARE, INC., and LIDIA MOYA, | § § § § | No. 08-23-00033-CV<br><br>Appeal from the<br><br>210th Judicial District Court |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2022DCV1585) |
| MARY HORTON KEELE, | § | |
| Appellee. | | |

### SUBSTITUTED MEMORANDUM OPINION

We withdraw our opinion and judgment of October 6, 2023, and substitute the following opinion in its place. Appellee's motion for rehearing is denied.

Appellee Mary Horton Keele sued Appellants Mountain View Health & Rehabilitation Center, Inc. (Mountain View), Creative Solutions in Healthcare, Inc. (Creative Solutions), and Lidia Moya (collectively, Premises Parties), alleging she slipped and fell on their premises "as an employee." The Premises Parties sought to compel arbitration under an employer-employee arbitration agreement Keele signed, which identifies her employer only as "the facility." We conclude that because Keele admitted she signed the agreement, she cannot dispute its authenticity. We further conclude that because Keele agreed to arbitrate with her employer, she cannot sue the Premises Parties in that capacity then dispute that she agreed to arbitrate with them.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Keele's lawsuit

Keele sued the Premises Parties,[1] alleging she was "on the premises owned, operated and controlled by Defendants . . . as an employee when she . . . slipped and fell [on] water on the floor."

Keele further alleged "[w]hile upon Defendants premises, [she] suffered bodily injuries as a direct result of . . . a dangerous condition, which Defendant knew, or in the exercise of ordinary care, should have known existed," and "Defendant, its agents, servants and employees negligently caused and/or negligently permitted such condition to exist and/or negligently failed to appropriately warn [her], despite the fact that Defendants, its agents, servants and employees knew, or in the exercise of ordinary care, should have known of the existence of the condition and that there was a likelihood of someone being injured." Keele added: "Alternatively, . . . [she] would also show that Defendant owed a duty to [her], that Defendants breached that duty and that such breach was a proximate cause of [harm] to [her]."

Keele additionally alleged Mountain View in particular "had a non-delegable duty to provide a safe workplace to its employees," "failed to ensure a safe workplace," and "failed to become a subscriber under the Worker's Compensation Act," but also alleged "Defendants" were negligent in "[f]ail[ing] to properly train, educate, instruct, and supervise [her] in the performance of her duties"; "[f]ail[ing] to furnish [her] with a safe place to work"; and "[f]ail[ing] to furnish [her] with adequate, necessary, and suitable tools, appliances and equipment."[2]

In her demand for damages, Keele alleged she had "undergone medical treatment including

---

[1] Keele also sued Encore Healthcare, LLC, which joined the motion to compel but is not a party to this appeal.

[2] Keele alleged no individual acts or omissions by Moya, but identified her as "DOA of Mountain View." Moya is identified as "Director of Nursing—Mountain View" in Creative Solutions' discovery responses.

surgical procedure, all of which were brought about by Defendants' negligence in failing to adhere to its non-delegable duty to provide a reasonably safe workplace."

### B. The motion to compel arbitration

After filing their answers, the Premises Parties filed a motion to compel arbitration, contending: "[T]his lawsuit involves claims by [Keele] against Defendants stemming from injuries [she] claims she incurred as a result of her employment with Defendants. The parties are bound by the [attached] arbitration agreements."

Two documents were attached to the motion. The first—entitled "Dispute Resolution and Arbitration Policy" (Arbitration Policy)—states "the initiation and/or continuation of employment with the facility after notice of this arbitration policy constitutes assent, acceptance, consent, and consideration for this agreement to arbitrate." The Arbitration Policy further states that claims subject to arbitration include "claims for negligence, gross negligence, on-the-job injury; [and] all lawsuits, claims, issues and disputes connected to, related to, arising from, accruing from and/or arising out of the employment relationship between the employee and the facility," and arbitration is the "exclusive method" for resolving such claims and is "mutually binding" on the employee and the facility and "their successors, subsidiaries, affiliates, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives." The Arbitration Policy does not define "facility."

The second document—entitled "Receipt, Safety Pledge and Arbitration Acknowledgement" (SPD Acknowledgment)—states that by signing, the employee acknowledges receipt of a Summary Plan Description. The SPD Acknowledgment further asserts the employee agrees to follow "safety rules of the Company," the employee must notify her supervisor if injured on the job, and: "[T]his SPD includes a mandatory company policy requiring *that claims or disputes relating to the cause of an on-the-job injury (that cannot otherwise be resolved between*

3

*the Company and me) must be submitted to an arbitrator.*" (emphasis in original). The SPD Acknowledgment does not define "Company."

Both documents were signed by Keele as "Employee." Both documents were also signed by Savannah Hayes, as "HR Coord. or Administrator" on the Arbitration Policy and as "Facility HR or Admin." on the SPD Acknowledgment, without identifying Hayes's employer in either.

## C. Keele's response

In her response, Keele argued "[Mountain View] [bore] the burden to prove that an enforceable arbitration agreement exists," but failed to do so because "the absence of Mountain View['s] name as a party on the alleged 'Mutual Agreement to Arbitrate' renders it invalid." Keele elaborated:

> On its four corners, the "Arbitration Agreement" does not state who are the parties.
>
> .    .    .
>
> Defendants' Arbitration Policy is silent as to who the party is who is entering into the contract. The policy simply states the "facility" but they fail to sufficiently identify which party is entering into the contract. Therefore, there is not a "meeting of the minds" as it relates to this agreement and therefore its void and null.

Keele further contended she had worked for Creative Solutions elsewhere in the past and, on relocating to El Paso, "went back to Creative Solutions and asked if she could have a similar position," and "was immediately hired back." In an affidavit, Keele stated, "[i]t was not until receiving and reading Defendants' Disclosure [in discovery] that I realized that Defendants claim that my employer was Mountain View." But while she contended she "always understood she was going to work for Creative Solutions" and "always understood that her employer was Creative Solutions," Keele also acknowledged she "filed suit against Defendants . . . alleging negligence at the time of the incident and as non-subscribers under the Texas Worker's Compensation Act," and pleaded that Mountain View in particular "had a non-delegable duty to provide a safe workplace

4

to its employees."[3]

### D. The trial court hearing

The trial court held a hearing on the Premises Parties' motion. None of the parties provided

additional evidence. The Premises Parties argued:

> [T]he trial court is able to decide these issues on the basis of pleadings alone . . .
> unless material facts necessary to determine the issue are controverted by opposing
> affidavits or otherwise admissible evidence. In this case there is nothing that
> [Keele's] [c]ounsel has raised that controverts the arbitration agreement
> whatsoever. She does not deny that she signed it. She does not deny that it exists,
> just that she didn't read or understand it, which is not a grounds to attack it under
> the law.

In turn, Keele argued she "provided . . . three documents showing where she had the good-

faith basis that she works for Creative Solutions" and, moreover:

> Creative Solutions has about . . . 50 different facilities in the State of Texas. Their
> arbitration agreement says "the facility." It doesn't say Mountain View or that
> [Keele]'s entering into any kind of arbitration with Mountain View. They could
> have put "Mountain View[]" in "the facility" and instead they chose to keep it as
> "the Facility." That could mean a lot of things . . . and that creates a fact issue . . . .
> Defendants haven't provided any sworn testimony when they knew they could have
> or should have. They did not. They only provided the arbitration agreement. And

---

[3] Keele's response also argued several affirmative defenses, contending that: (1) she did not receive notice of the arbitration agreement; (2) the agreement was substantively unconscionable due to certain fees she would be charged; and (3) the agreement was procedurally unconscionable, as she was given a "stack of documents to sign and immediately return" to obtain employment and "Defendants took advantage of [her] disparate bargaining ability" in requiring her to sign them. Keele does not argue these defenses on appeal, and we agree with the Premises Parties that they lack merit. First, Keele's signature on the documents constituted notice of the agreement. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162–63 (Tex. 2006). Second, as the Premises Parties pointed out in the trial court, Keele mistakenly believed that the American Arbitration Association (AAA), the named arbitrator in the agreement, would charge her $5,100, its fee for a commercial arbitration, when in fact its applicable fee for a workplace arbitration was $300. Third, unequal bargaining power does not, standing alone, support a finding of procedural unconscionability in the absence of fraud or misrepresentation, which Keele did not allege. *See APC Home Health Services, Inc. v. Martinez*, 600 S.W.3d 381, 395 (Tex. App.—El Paso 2019, no pet.) (recognizing that "unequal bargaining power does not establish grounds for invalidating an arbitration agreement absent a well-supported claim that the agreement resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract"); *see also In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."). Further, Keele argues for the first time on appeal that the Arbitration Policy's cost-shifting provision, which gives the arbitrator discretion to award attorney's fees, is substantively unconscionable. But because Keele failed to raise this issue in the trial court, we are unable to consider it on appeal. *See APC*, 600 S.W.3d at 389 (appellate court is "limited to considering the grounds presented to the trial court by the party resisting arbitration").

on its four corners, . . . it does not show that [Keele] entered into an arbitration policy with Mountain View.

.    .    .

They chose to put "the facility" which could mean any of the 50 . . . that they have in the State. And that's what we have in evidence today.

Following the hearing, the trial court denied the motion to compel arbitration without stating why. This appeal followed. In one global issue, the Premises Parties argue that because they established the existence of a valid arbitration agreement and Keele failed to establish a defense against it, the trial court erred in denying their motion to compel arbitration.

## APPLICABLE LAW AND STANDARD OF REVIEW

### A.  Applicable law

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010). Arbitration agreements are interpreted under traditional contract principles. *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 194 (Tex. 2022). Under such principles, the fact that a party has signed an arbitration agreement creates a "strong presumption" that it has consented to its terms. *Wright v. Hernandez*, 469 S.W.3d 744, 756–57 (Tex. App.—El Paso 2015, no pet.); *see also Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests its assent by signing an agreement."). Further, the elements of a valid contract, include a "meeting of the minds." *Law Office of Thomas J. Henry v. Cavanaugh*, No. 05-17-00849-CV, 2018 WL 2126936, at *3 (Tex. App.—Dallas May 7, 2018, pet. denied). The term "meeting of the minds" refers to the "parties' mutual understanding and assent." *Id*.

If the moving party establishes a valid arbitration agreement, the burden shifts to the other party to raise a defense against it. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam).

6

**B. Standard of review**

We review a trial court's ruling on a motion to compel arbitration under an abuse of discretion standard. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). In doing so, we defer to the trial court's factual findings if supported by evidence but review its legal conclusions de novo. *Id.* When a trial court improperly denies a party's right to arbitrate, the court has abused its discretion. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding) Whether an arbitration agreement is valid is a legal question subject to de novo review. *J.M. Davidson, Inc.*, 128 S.W.3d 223, 227 (Tex. 2003). An appellate court may uphold the trial court's ruling on a motion to compel arbitration on any appropriate legal theory urged below. *APC Home Health Services, Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.).

## DISCUSSION

**A. Authentication**

Keele argues that, as a threshold matter, we may affirm the trial court's denial of the Premises Parties' motion to compel arbitration because neither of the motion's two exhibits were authenticated. In support, Keele cites our opinion in *United Rentals, Inc. v. Smith*, which held, "[s]imply attaching a document to a pleading neither makes the document admissible . . . dispenses with proper foundational evidentiary requirements, [n]or relieves a litigant of complying with other admissibility requirements." 445 S.W.3d 808, 814 (Tex. App.—El Paso 2014, no pet.) (citing *Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 725 (Tex. App.—San Antonio 2004, no pet.); *see also Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 132 (Tex. App.—El Paso 2018, no pet.) ("[A]rbitration cases . . . involve more than simply handing an arbitration agreement to the trial court and asking for enforcement.").

The Premises Parties argue that because no authentication defect was raised in the trial

7

court, the issue was waived. While we agree Keele failed to raise the issue in the trial court, an authentication defect is not always waivable.[4] But we need not decide whether any such defect was waived or waivable, as Keele admitted she signed the documents in question. In her affidavit, Keele acknowledges having signed the Arbitration Policy and SPD Acknowledgment, claiming she "would not have signed" these documents "if it had been explained to [her] what arbitration was." Further, she stated she received no "advice from [her] lawyer at any point prior to *signing* [the Arbitration Policy.]" (emphasis added). Similarly, in her response to the motion to compel, Keele admitted the Arbitration Policy "contain[ed her] signature" and she was "required" to sign both documents.

When a party admits to having signed a document, the party cannot then dispute the document's authenticity.[5] *See Martinez v. Tuesday Morning, Inc.*, No. 05-96-00629-CV, 1997 WL 644866, at *2 (Tex. App.—Dallas Oct. 21, 1997, no pet.) (not designated for publication) ("Martinez admitted . . . she had signed both the injury report and the unemployment records. By identifying her signature on these documents, Martinez established the authenticity of the documents."); *Bell v. Koch Foods of Miss., LLC*, 358 Fed. Appx. 498, 501 (5th Cir. 2009) (per curiam) (overruling challenge to arbitration agreements' authenticity where party did not object in trial court and never argued agreements had not been signed). Thus, Keele's authentication challenge fails.

### B. Meeting of the minds

---

[4] As we explained in *Gunville v. Gonzales*, "[c]omplete absence of authentication is a defect of substance, while an attempted, but improper authentication is a defect of form." 508 S.W.3d 547, 568 (Tex. App.—El Paso 2016, no pet.). Thus, the latter is waivable, but the former can be raised for the first time on appeal. *Hernandez v. Gallardo*, 594 S.W.3d 341, 345 (Tex. App.—El Paso 2014, pet. denied).

[5] Had Keele denied signing the documents, we might have reached a different result, as an alleged signature on a document, without more, does not authenticate it. *See United Rentals, Inc. v. Smith*, 445 S.W.3d 814 (Tex. App.—El Paso 2014, no pet.) (party's signature on contract is strong evidence of assent, but if party denies having hand-signed, evidence of signature's authenticity is required).

### 1. Face of the agreement

Keele argues that the Premises Parties "did not establish there was a meeting of the minds as to the essential term of party identity." More specifically, she contends "[t]he identity of the contracting parties is a material term," and "[i]f the identity of the contracting parties cannot be determined from the face of the contract, the contract fails" (citing *Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 830 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)).[6]

The Premises Parties argue they could not find any authority holding that "for an arbitration agreement to be enforceable the employee must subjectively understand the exact name of her employer." Nor could we. Further, *Range* did not hold that "if the identity of the contracting parties cannot be determined from the face of the contract, the contract fails." Instead, *Range* considered matters outside a contract's four corners in determining whether a party thereto was identifiable. 530 S.W.3d at 830 (considering separate lease in determining whether identity of buyer referred to as "New Entity" in real estate sales contract could be determined). Thus, Keele's argument regarding the face of the agreement fails.[7]

### 2. Keele's pleading

Keele argues not only is it "impossible to tell from the face of the [Arbitration Policy] with

---

[6] Keele similarly argued in the trial court that "[o]n its four corners, the 'Arbitration Agreement' does not state who are the parties," and "[t]he policy simply states the 'facility' but . . . fail[s] to sufficiently identify which party is entering into the contract," thus "there [wa]s not a 'meeting of the minds.'"

[7] Keele argues for the first time in her motion for rehearing that "[w]here a latent ambiguity emerges as to a crucial term in a contract, intent to be bound becomes a question of fact," citing *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 768–69 (Tex. App.—El Paso 2004, no pet.). But even assuming this argument was not waived by not having been raised in the trial court or in Keele's brief on appeal, *see N&A Properties, Inc. v. PH Steel, Inc.*, 656 S.W.3d 556, 569 (Tex. App.—El Paso 2022, no pet.) (appellate argument must comport with trial court argument); *Wentworth v. Meyer*, 839 S.W.2d 766, 778 (Tex. 1992) (Cornyn, J., concurring) (sole purpose of rehearing is to correct errors on issues already presented on appeal), Keele fails to identify the ambiguity in question, explain why it is latent rather than patent, identify the collateral matter that makes it apparent, or explain why the evidence presents a fact issue. *See Interest of A.N.G.*, 631 S.W.3d 471, 476–77 (Tex. App.—El Paso 2021, no pet.) (issue may be waived when argument or analysis not provided). In any event, Keele is bound by her pleading, as discussed below.

whom Keele is purportedly bound to arbitrate," but also "[n]o other competent evidence exists in the record that would establish who was a party."

The Premises Parties argue Keele's pleading is the key to identifying the parties to the arbitration agreement:

> According to [Keele's] pleadings, the injury she alleges she suffered while she was an employee occurred at 1600 Murchison Dr.[,] El Paso, Texas, the location of Mountain View. [Keele]'s pleadings also specifically allege that "Defendant Mountain View" had a duty to provide a safe workplace to its employee. As such, [Keele]'s . . . pleadings establish that she knew her employer was in fact Mountain View and that she was entering into an agreement to arbitrate any workplace injury with Mountain View. (record citations omitted).[8]

In support of the proposition that pleadings are among the matters a trial court may consider in deciding whether to compel arbitration, the Premises Parties cite *Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) and *APC*, 600 S.W.3d at 389.

We conclude Keele's pleading establishes that each of the Premises Parties is entitled to arbitration of Keele's work-related claims against them. Keele pleaded that she slipped and fell "as an employee" on premises "owned, operated and controlled by Defendants." And while Keele pleaded that Mountain View in particular "had a non-delegable duty to provide a safe workplace to its employees," she also pleaded that "Defendants" were negligent in "[f]ail[ing] to properly train, educate, instruct, and supervise [her] in the performance of her duties"; "[f]ail[ing] to furnish [her] with a safe place to work"; and "[f]ail[ing] to furnish [her] with adequate, necessary, and suitable tools, appliances and equipment." These allegations plainly identify the Premises Parties

---

[8] The Premises Parties presumably focus on Mountain View here because Keele's argument in the trial court—both in her response to the motion to compel and at the hearing thereon—focused on showing that "the absence of Mountain View['s] name as a party on the alleged 'Mutual Agreement to Arbitrate' render[ed] it invalid" (response) and "on its four corners, . . . [the arbitration agreement] does not show [Keele] entered into an arbitration policy with Mountain View" (hearing).

as Keele's employer,[9] and it is undisputed that Keele signed documents in which she agreed to arbitrate work-related claims with her employer.

Beyond *Tipps* and *APC*, our conclusion is supported by caselaw holding that factual statements in pleadings serve as judicial admissions, e.g., *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 839 (Tex. 2022) (clear, deliberate, and unequivocal factual allegation in live pleading not pleaded in alternative constitutes judicial admission that conclusively establishes fact and bars pleader from disputing it). Our conclusion is also supported by the Texas Supreme Court's decision in *In re Macy's Tex., Inc.*, 291 S.W.3d 418 (Tex. 2009) (per curiam).

Here, like the defendant in *Macy's*, the Premises Parties seek to compel arbitration under documents Keele signed as an employee in which she agreed to arbitrate work-related claims with an employer who is not specifically identified and instead referred to using only the undefined terms "facility" and "company." *Cf. Macy's*, 291 S.W.3d at 419 (documents referred to employer using only undefined terms "Company" and "your particular employer").[10] And like the plaintiff's

---

[9] While Keele's pleading uses the terms "defendant" and "defendants" irregularly, sometimes shifting from one to the other within a single sentence, we see nothing to indicate an intent to allege that any of the Premises Parties acted or failed to act other than as Keele's employer.

[10] Keele argues *Macy's* is distinguishable because, *inter alia*, (1) the arbitration agreement there "identified specific corporate entities by name," and (2) "[the] defendant submitted affirmative evidence showing that it was the entity identified in the agreement as 'your specific employer'. . . . Specifically, Macy's submitted an affidavit from a corporate representative that 'establishes that the Acknowledgment was signed 'For the Company' by an assistant manager at the Macy's store where [the plaintiff] worked.'" But while Keele is correct that the *Macy's* arbitration agreement "identified specific corporate entities by name"—namely, Federated Department Stores, Inc., Macy's West, Inc., and Federated Systems Group, Inc.—it failed to name the only one that mattered: the defendant, Macy's Texas, Inc. *In re Macy's Tex., Inc.*, 291 S.W.3d 419 (Tex. 2009) (per curiam). Likewise, the *Macy's* affidavit named three specific entities—Macy's South, Macy's West, and Macy's Inc., f/k/a/ Federated Department Stores, Inc.—but again not the defendant, Macy's Texas, Inc. *Id.* And while the Court did note that the affidavit "establishe[d] that the Acknowledgment was signed 'For the Company' by an assistant manager at the Macy's store where [the plaintiff] worked," *id*. at 420, in so doing, the Court did not suggest that the affidavit established any link between "the Company" and the defendant, Macy's Texas, Inc. To the contrary, the Court's only point was that the Acknowledgment exceeded the requirements of the FAA. *Id.* at 419. Ultimately, the holding in *Macy's* had nothing to do with *evidence* of the employer's identity and everything to do with the plaintiff's *pleading* of the employer's identity: "As [the plaintiff] agreed to arbitrate with her employer and purported to sue her employer, she cannot avoid arbitration by raising factual disputes about her employer's correct legal name." *Id.* at 420.

11

pleading in *Macy's*, Keele's pleading involves claims brought by an employee against an employer, alleging that "[Keele] was on the premises owned, operated and controlled by Defendants . . . *as an employee* when she [was injured]" (emphasis added), and that "Defendants" were negligent in "[f]ail[ing] to furnish [her] with a safe place to work" and "[f]ail[ing] to furnish [her] with adequate, necessary, and suitable tools, appliances and equipment." *Cf. id.* at 420 (pleading alleged a "failure to provide proper equipment and a safe workplace—both nondelegable duties owed by [an] employer").

*Macy's* held that because the plaintiff had "agreed to arbitrate with her employer and purported to sue her employer, she [could not] avoid arbitration by raising factual disputes about her employer's correct legal name." *Id.* Accordingly, *Macy's* supports the conclusion that because Keele agreed to arbitrate with her employer, then filed suit against the Premises Parties identifying them as her employer, she cannot now avoid arbitration with these parties by raising factual disputes about her employer's correct name. *Macy's*, 291 S.W.3d at 420; *see also SSC Wimberley Operating Co., LLC v. Goodman*, 665 S.W.3d 729, 737 (Tex. App.—San Antonio 2023, no pet.) (six defendants were entitled to compel arbitration under arbitration agreement between plaintiff and unspecified employer, in part because plaintiff's pleading identified all defendants as her employer or an employee of her employer).[11]

---

[11] In her motion for rehearing, Keele argues we erred by engaging in "a pleadings analysis," which she contends was waived in the trial court and on appeal. But as explained above, in the trial court the Premises Parties based both their motion to compel and hearing arguments largely on Keele's pleading. Further, in their appellate brief, the Premises Parties pointed to specific provisions in Keele's pleading as well as relevant authorities, arguing: "As such, [Keele]'s . . . pleadings establish that she knew her employer was in fact Mountain View and that she was entering into an agreement to arbitrate any workplace injury with [it]." Keele further argues that "[b]ecause the [Premises] Parties did not argue that *In re Macy's* applied, the Court could not rely on that argument." However, we are aware of no prohibition against an appellate court considering relevant authorities, whether cited by the parties or not.

Keele further argues we have effectively overruled *United Rentals*, 445 S.W.3d at 808, which she contends "limit[ed] the use of uncorroborated fragmentary arbitration agreements." But *United Rentals* addressed only evidentiary issues (i.e., unauthenticated agreement and incomplete recitation of agreement's terms by witness), whereas here we address

We reject Keele's other arguments for the reasons explained above in footnote three.

Appellants' Issue One is sustained.

## V.  CONCLUSION

We reverse the trial court's order denying the motion to compel arbitration and remand this matter to the trial court to enter an order consistent with this opinion.

LISA J. SOTO, Justice

June 17, 2024

Before Alley, C.J., Palafox and Soto, JJ.
Alley, C J., concurring
Palafox, J., dissenting and would grant Motion for Rehearing

---

a pleading issue: whether Keele can, after agreeing to arbitrate with her employer, sue parties she herself identifies as her employer, and then deny she has agreed to arbitrate with them. We see no conflict with *United Rentals*.

Keele additionally argues we have departed from our precedent in *Golden Age Senior Living of El Paso, LLC v. Atwood*, 486 S.W.3d 44, 45–47 (Tex. App.—El Paso 2016, no pet.), which she contends "involve[ed] a similar latently ambiguous agreement under similar circumstances." But the arbitration agreement there, unlike here, named a specific entity, 12 Oaks. And as we explained there: "In the arbitration agreement, 12 Oaks is identified as the 'Company,' and, by the terms of this plan, an 'Employee' is obligated to arbitrate his or her claims against the 'Company.'" *Id*. Accordingly, we held that "the arbitration agreement clearly and unmistakably identifies 12 Oaks as the employer with whom Atwood agreed to arbitrate his disputes." *Id*. at 49. We see no departure from *Golden Age* in our opinion here.

13