In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00020-CV

_____

WILLIAM CLAYTON AND ALICE CLAYTON, Appellants

V.

JARED TOMLINSON, Appellee

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 22-10-13238-CV

MEMORANDUM OPINION

The underlying litigation arose after Appellee Jared Tomlinson ("Tomlinson") purchased a home from Appellants William Clayton and Alice Clayton (collectively, "the Claytons"). Tomlinson also sued the inspector and inspection company, Redfish, LLC ("Redfish"). The Claytons sought to compel Tomlinson to arbitrate based on his "Pre-Inspection Agreement" with Redfish and the inspector, although they were non-signatories to that agreement. The Claytons filed an interlocutory appeal, and in one issue, challenge the denial of their Motion

1

to Compel Arbitration. *See Touchstone v. Gagliano,* No. 09-21-00342-CV, 2023 WL 7395409, at *1 (Tex. App.—Beaumont Nov. 9, 2023, no pet.) (mem. op.) (citation omitted) ("The Legislature has granted appellate jurisdiction over an interlocutory ruling denying a motion to compel arbitration."); *Wal-Mart Stores Tex., LLC v. Peavley,* No. 09-21-00403-CV, 2023 WL 1831122, at *1 n.1 (Tex. App.—Beaumont Feb. 9, 2023, no pet.) (mem. op.) (allowing interlocutory appeal of denial to compel arbitration). For the reasons discussed below, we affirm.

## Background

In late 2020, Tomlinson entered into contractual negotiations to purchase the real waterfront property located in Montgomery, Texas (the "Property") from the Claytons. In March 2021, Tomlinson hired Redfish to inspect the home before purchase. According to Tomlinson, based on the disclosures and assurances of the Claytons and Redfish, he signed and executed a contract to purchase the Property in April 2021. Months later, Tomlinson became aware of what he alleges were "significant and serious defects" to the waterfront section of the Property through a repairman. After learning of the defects, Tomlinson sued the Claytons and Redfish. In his petition, Tomlinson alleges that the Claytons were aware of the Property's defects, failed to disclose the defects, and disguised the defects during the purchase process. Tomlinson sued Redfish alleging that had Redfish conducted a "competent inspection" of the Property, the defects would have been revealed. Tomlinson

2

brought claims against the Claytons for: Deceptive Trade Practices Act ("DTPA") violations; common law fraud; statutory fraud in a real estate transaction; negligent misrepresentation; and breach of contract. Tomlinson initially brought a DTPA claim against Redfish. He later filed his First Amended Petition asserting additional claims against Redfish, including: common law fraud; statutory fraud in a real estate transaction; negligent misrepresentation; and breach of contract.

After filing its Answer, Redfish filed a Motion to Compel Arbitration and Stay/Abate Proceedings based on the terms of the Pre-Inspection Agreement signed by Tomlinson and the Redfish Inspector that mandates arbitration to resolve any disputes between the parties. Redfish included the Agreement as an attachment to the Motion to Compel. Section VII of the Agreement states:

> In the event a dispute arises regarding an inspection that has been performed under this agreement, the Client agrees to notify the Inspector in writing, within ten (10) days of the date the Client discovers the basis for the dispute so as to give the Inspector a reasonable opportunity to reinspect the property. Client agrees to allow re-inspection before any corrective action is taken. Client agrees not to disturb or repair or have repaired anything which might constitute evidence relating to a complaint against the Inspector. Client further agrees that the Inspector can either conduct the reinspection himself or can employ others (at Inspector's expense) to reinspect the property, or both. In the event a dispute cannot be resolved by the Client and the Inspector, the parties agree that any dispute or controversy shall be resolved by mandatory and binding arbitration. The arbitration panel must include at least one licensed home inspector.

Based on the dispute resolution provision and Texas law that strongly favors enforcement of the provision, Redfish requested that the trial court abate the case

and require Tomlinson and Redfish to commence binding arbitration to resolve any disputes related to the pre-purchase inspection.

As a result of the Motion to Compel Arbitration and Stay/Abate Proceedings, Tomlinson and Redfish agreed to arbitrate his claims against Redfish and stay/abate the proceedings between Tomlinson and Redfish. They submitted an Agreed Order evidencing that agreement, which the trial court signed on May 31, 2023.

In November 2023, the Claytons filed a No-Evidence Motion for Summary Judgment as to all of Tomlinson's claims. Tomlinson filed his Response to Defendants William and Alice Clayton's No Evidence Motion for Summary Judgment arguing that he provided evidence on all elements of his claims against them. Tomlinson attaches exhibits that he argues are evidence supporting his claims, including the executed real estate contract for the Property, the Seller's Disclosure Notice, and inspection reports. The trial court denied the Claytons' No-Evidence Motion for Summary Judgment.

In December 2023, the Claytons filed a Motion for Summary Judgment on Affirmative Defenses asserting that Tomlinson failed to timely sue them for his DTPA claims since Tomlinson filed his suit more than two (2) years after the Seller's Disclosures were delivered. That same day, the Claytons counterclaimed for attorneys' fees contending that Tomlinson's suit was groundless and brought in bad faith.

4

Tomlinson filed his Response to the Claytons' Motion for Summary Judgment on Affirmative Defenses and Motion to Strike the Claytons' First Amended Answer and Original Counter Claim. In his Response, Tomlinson argues that the Claytons' First Amended Answer and Affirmative Defenses and the Claytons' Original Counter Claim are untimely since the pleading deadline ended three (3) months prior. Tomlinson further contends that the Claytons' statute of limitations affirmative defense is waived since it was untimely, and Tomlinson argues that he timely filed his claims within the two-year statute of limitations, based on the date he discovered the injury.

That same month, December 2023, the Claytons filed their Motion to Compel Arbitration based on the dispute resolution provision in the Pre-Inspection Agreement between Tomlinson and Redfish. The Claytons seek to have Tomlinson arbitrate his claims against them and argue they are direct beneficiaries of the Pre-Inspection Agreement because they are beneficiaries of the inspection Redfish conducted. According to the Claytons, as beneficiaries of the inspection, they can compel arbitration under the doctrine of direct benefits estoppel.

Tomlinson filed his Response to the Claytons' Motion to Compel Arbitration and argues that direct benefits estoppel does not apply because Tomlinson's claims against the Claytons are independent of the Pre-Inspection Agreement. Tomlinson also asserts that the Claytons' Motion to Compel must be denied because the dispute

resolution provision in the Pre-Inspection Agreement does not expressly grant any third parties the ability to participate in the arbitration nor is there evidence that the Pre-Inspection Agreement contemplated or intended to include third parties like the Claytons.

The Claytons later filed their First Amended Motion to Compel Arbitration contending that the trial court should grant the Motion to Compel because any potential liability of the Claytons could arise as a result of the Pre-Inspection Agreement between Redfish and Appellee. They further argue that their potential liability or lack thereof would be "inextricably related" to Redfish's liability. Finally, the Claytons argue that because Tomlinson is arbitrating with Redfish, he is not prejudiced by the granting of the motion.

In January 2024, the trial court signed an Order Setting Hearing on Motion to Compel Arbitration. In the Order, the trial court stated the Court's concern with the exclusivity provision in the Pre-Inspection Agreement that stated:

> The Inspection report is to be prepared exclusively for the Client named and is not transferable to anyone in any form. Client give[]s permission for the Inspector to discuss report findings with real estate agents, specialists, or repair persons for the sake of clarification. A copy of the Inspection Report may be released to the selling Real Estate Agent.

The Court stated that the exclusivity provision showed "that the parties did not intend for the Clayton defendants to be beneficiaries under the Pre-Inspection Agreement." The Order stated further that neither the Claytons' counterclaim nor

6

the Tomlinson's claims against them are based on the provisions of the Pre-Inspection Agreement. Nevertheless, the trial court requested that the parties appear for a hearing on the Motion.

At the hearing, the Claytons argued that a non-signatory can compel arbitration and that the term "any dispute" in the dispute resolution provision should be broadly interpreted to include a dispute that includes the Claytons-Sellers. They further argued that Tomlinson's claims against them and Redfish are so intertwined and interdependent that Tomlinson is not permitted to arbitrate with one party and litigate with the other.

At the hearing's conclusion, the trial court denied the Claytons Motion to Compel Arbitration. This interlocutory appeal followed.

**Standard of Review**

"[A] party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the disputed claim falls within the scope of that agreement." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)). We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*,

79 S.W.3d 48, 52 (Tex. 2002) (per curiam). In an abuse of discretion review, we should not reverse because we might have decided the issue differently. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). We defer to a trial court's factual findings and review the trial court's legal determinations de novo, including questions of contract interpretation. *See Wagner*, 627 S.W.3d at 283; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009); *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019) ("We construe contracts under a de novo standard of review.") (citation omitted). Whether a valid arbitration agreement exists and whether the claims in dispute fall within the scope of the arbitration agreement are legal questions subject to de novo review. *See Henry*, 551 S.W.3d at 115; *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643.

A party seeking to compel arbitration has the initial burden of proof to establish that a valid arbitration agreement exists and that the claims are within the agreement's scope. *See Wagner*, 627 S.W.3d at 282; *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). While there is a strong presumption favoring arbitration, the presumption only arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson*, 128 S.W.3d at 227. Ordinary principles of state contract law determine whether a valid agreement to arbitrate exists. *Kellogg Brown & Root*, 166 S.W.3d at 738. After

8

the proponent of arbitration has made the required showings, the burden then shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *See Henry*, 551 S.W.3d at 115; *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014).

**Analysis**

In three arguments, the Claytons challenge the trial court's denial of their Motion to Compel Arbitration based upon three complaints: there is a valid arbitration agreement broad enough to cover all disputes; Tomlinson is equitably estopped from denying the Claytons's reliance on the arbitration clause; and the Claytons did not waive reliance on the arbitration clause. First, the Claytons argue that the dispute resolution provision in the Pre-Inspection Agreement is broad enough to cover all disputes that were made jointly against the Claytons and Redfish despite the Claytons being non-signatories to the Pre-Inspection Agreement. According to the Claytons, Tomlinson made several claims against both them and Redfish for DTPA, fraud, negligent misrepresentation, and breach of contract. The Claytons contend that Tomlinson's claims were made jointly against both parties and that a broad reading of the provision requires that all claims, both tort and contract, against all parties be arbitrated.

In response, Tomlinson argues that his claims against the Claytons are not based on the Pre-Inspection Agreement between him and Redfish, and that his

9

claims against the Claytons are independent and could have been pursued absent any claims against Redfish. According to Tomlinson, the Claytons' theory fails because he does not allege that the Claytons breached or benefited from the Pre-Inspection Agreement with Redfish. Tomlinson also argues that it is clear that the language in the Pre-Inspection Agreement only intended to bind him, Redfish, and the inspector to the Pre-Inspection Agreement's terms based on the included exclusivity provision.

Generally, broad arbitration provisions are those "that apply to 'any dispute' or 'all disputes' arising from any agreement." *Rebellion Energy II, LLC v. Liberty Res. Power River Operating, LLC*, No. 01-19-00413-CV, 2019 WL 5699742, at *3 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, no pet.) (mem. op.) (quoting *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)). "Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms." *Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 633 (Tex. 2018) (citing *Rubiola*, 334 S.W.3d at 224). Generally, parties must sign arbitration agreements before being bound by them. *Rubiola*, 334 S.W.3d at 224. "But sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (citing *In re Vesta Ins. Grp.*, 192 S.W.3d 759, 761–62 (Tex. 2006) (per curiam)) (other citations omitted). When

10

signatories to an arbitration agreement designate certain non-signatories as parties to the agreement, those third parties may enforce the right to enforce the arbitration agreement against those signatories in certain circumstances. *See Rubiola*, 334 S.W.3d at 222; *see also Waterstone on Lake Conroe, Inc. v. Williams*, No. 09-17-00071-CV, 2017 WL 3298234, at *4 (Tex. App.—Beaumont Aug. 3, 2017, no pet.) (mem. op.) (determining that "[b]ecause the arbitration agreement expressly provides that officers are non-signatories that are considered parties to the agreement," the officer could compel arbitration under the agreement). "Whether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide." *Rubiola*, 334 S.W.3d at 224; *Williams*, 2017 WL 3298234, at *3.

We must consider the Pre-Inspection Agreement's terms to determine the parties' intent regarding who should be bound by the dispute resolution provision. *See Jody James Farms, JV*, 547 S.W.3d at 633. Here, the Pre-Inspection Agreement indicates it was "entered into on March 11, 2021, between Redfish Inspection LLC and the inspector – James Sprouse (herein after knowns as the inspector)" and "Jared Tomlinson (herein after known as the Client)." In addition to the dispute resolution provision, the Pre-Inspection Agreement includes an exclusivity provision that states:

11

> The Inspection report is to be prepared exclusively for the Client named and is not transferable to anyone in any form. Client give[]s permission for the Inspector to discuss report findings with real estate agents, specialists, or repair persons for the sake of clarification. A copy of the Inspection Report may be released to the selling Real Estate Agent.

Based on the terms of the Pre-Inspection Agreement, it is clear that the parties intended that only Tomlinson, Redfish, and the Redfish inspector be bound by those terms. The dispute resolution provision states that "[i]n the event a dispute cannot be resolved by the Client and the Inspector, the parties agree that any dispute or controversy shall be resolved by mandatory and binding arbitration." The dispute resolution provision, as expressed in the Pre-Inspection Agreement's terms, only intended to cover disputes between Tomlinson and Redfish, including the Redfish inspector, which were the Parties identified in the Pre-Inspection Agreement. The Claytons are not designated as parties nor are they signatories, thus they are not covered by any terms of the dispute resolution provision. Unlike the agreements at issue in *Rubiola* and *Waterstone on Lake Conroe v. Williams*, the express terms of the Pre-Inspection Agreement did not provide that any non-signatories would be considered parties such that they could compel arbitration. *See Rubiola*, 334 S.W.3d at 224; *Williams*, 2017 WL 3298234, at *4. Therefore, based on the terms and express language of the Pre-Inspection Agreement, the Claytons failed to demonstrate that it was the parties' intent to bind any non-signatories to the terms

12

and conditions of the Pre-Inspection Agreement. *See Jody James Farms, JV*, 547 S.W.3d at 633.

Second, the Claytons argue that the principle of equitable estoppel should apply to bind a non-signatory to the dispute resolution provision in the Pre-Inspection Agreement. According to the Claytons, Tomlinson's pleadings are filed jointly against Redfish and the Claytons, and Tomlinson's claims against Redfish and them are inextricably intertwined. The Claytons argue that Tomlinson should not be permitted to arbitrate the claims against Redfish, but be required to litigate the same claims against them.

Courts "have recognized six theories, arising out of common principles of contract and agency law, that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary." *Kellogg Brown & Root*, 166 S.W.3d at 739. It should be noted that the Claytons did not raise, nor did they bring forth any evidence with regard to the theories (1), (2), (3) or (4) set forth above. Under the doctrine of direct benefits estoppel, a type of equitable estoppel, courts have "held that a non-signatory plaintiff may be compelled to arbitrate if its claims are 'based on a contract' containing an agreement to arbitrate." *Id.* at 740 (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) ("[A] litigant who sues based on a contract subjects him or herself to the contract's terms.")). However, if a

13

"non-signatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled under this theory." *Id.* at 739–40 (citations omitted).

Generally, nonparties "must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law." *Vesta Ins. Grp., Inc.*, 192 S.W.3d at 761. "[T]he claim must depend on the existence of the contract…and be unable to stand independently without the contract." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015) (quotation marks omitted). When "the alleged liability 'arises solely from the contract or must be determined by reference to it' equity prevents [the non-signatory plaintiff] from avoiding [an] arbitration clause that was part of that [contract]." *Jody James Farms, JV*, 547 S.W.3d at 637 (citations omitted). To determine whether a claim seeks a direct benefit from a contract with an arbitration provision, courts consider the substance of the claim, not artful pleadings. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005).

In this case, Tomlinson's First Amended Petition alleges that the Claytons delivered their "Seller's Disclosure Notice" to him in September 2020 indicating they were unaware of any defects, malfunctions, or areas needing repair on the Property. Subsequently, in March 2021, Tomlinson contracted with Redfish to inspect the Property, and the inspection report provided failed to detail any

14

deficiencies. Based on the Claytons' disclosures and the report prepared by Redfish, Tomlinson entered into a contract to purchase the Property. Additionally, Tomlinson's breach of contract claim against the Claytons is based on one agreement while his breach of contract claim against Redfish is based on a totally different and separate agreement. Tomlinson's breach of contract claim against the Claytons indicates that it is based on the real estate contract Tomlinson entered with the Claytons, more specifically referred to as the Texas Real Estate Commission (TREC) "One To Four Family Residential Contract (Resale)", including the "Seller's Disclosure Notice," both of which do not contain any arbitration provision or requirement. Whereas Tomlinson's breach of contract claim against Redfish is based on the Pre-Inspection Agreement, which is the only contract including an arbitration provision. Tomlinson's remaining claims against the Claytons, including breach of DTPA, fraud, and negligent misrepresentation, are all based on his allegations that the Claytons failed to properly disclose defects on the Property in their Seller's Disclosure Notice. The Claytons failed to demonstrate that Tomlinson's claims against them are tied to or dependent on Tomlinson's Pre-Inspection Agreement with Redfish to conduct a proper inspection and inform him of any deficiencies. Therefore, the Claytons have failed to demonstrate that they are entitled to compel arbitration with Appellee based on the direct benefits estoppel theory. *See Kellogg Brown & Root*, 166 S.W.3d at 741.

15

Having considered the Claytons' arguments, we hold that Tomlinson's claims against them are not subject to the dispute resolution provision of the Pre-Inspection Agreement between Tomlinson and Redfish. Accordingly, we overrule the Claytons' arguments complaining that the trial court abused its discretion by denying their Motion to Compel Arbitration. We need not address the Claytons' third complaint regarding waiver, as it would not change the outcome of their appeal. *See* Tex. R. App. P. 47.1.

## Conclusion

Having considered and overruled the Claytons' first and second issues, we conclude the trial court did not abuse its discretion by denying their Motion to Compel Arbitration. Accordingly, we affirm the trial court's order denying the Claytons' Motion to Compel Arbitration.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on November 21, 2024
Opinion Delivered January 30, 2025

Before Golemon, C.J., Wright and Chambers, JJ.